571 A.2d 1305

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DAVID
SMULLEN, DEFENDANT–RESPONDENT.

Argued January 17, 1990—Decided April 10, 1990.

*Debra L. Stone,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Stephen M. Pascarella* argued the cause for respondent (*Francis X. Moore,* attorney, *Stephen M. Pascarella* and *Robin T. Wernik,* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

The central question in this appeal is whether the proceedings establish an adequate factual basis for a guilty plea to criminal sexual contact with a young child. The facts of this case, like those in so many improper sexual contact cases, are mortifying to a defendant. In many cases a family member is (or has been) the victim of the crime. Here it was not. Still, it is not surprising that defendant did not wish to elaborate on the

details of the crime. A presentence report or an "Avenel" diagnosis will often require such elaboration, but the question is how much of that need be part of the guilty plea. We hold that defendant's affirmative answer to the question of whether he had touched a minor child, who was more than four years younger than he, for the purpose of sexual pleasure established the factual basis for conviction of the second-degree crime of criminal sexual contact under *N.J.S.A.* 2C:14–2b.[1] The subsidiary question is whether the trial court correctly denied defendant's later motion to set aside the plea on the basis that it was neither voluntary nor truthful but rather was the result of defendant's misguided desire to spare family and victims the pain of a trial. We hold that in the circumstances of this case, the trial court correctly exercised its discretion in not setting aside the plea, because of its abiding judgment that defendant fully understood the nature of the charges, the factual basis that he admitted, the truthfulness of his admission, and the significance of the plea bargain that he made. Accordingly, we reverse the judgment of the Appellate Division, which set aside the plea.

I

On May 2, 1986, the police arrested defendant on a complaint warrant, charging him with one count of aggravated sexual assault, a first-degree crime. A grand jury subsequently indicted defendant on two counts of first-degree aggravated sexual assault involving the sexual penetration of two children, both of

---

[1]*N.J.S.A.* 2C:14–2b reads in full:

An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than thirteen years old and the actor is at least four years older than the victim.

*N.J.S.A.* 2C:14–1d defines "sexual contact" as

an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor.

whom were less than thirteen years old, in violation of *N.J.S.A.* 2C:14–2a(1); two counts of second-degree sexual assault involving criminal contact with two children, both of whom were more than four years younger than he, contrary to *N.J.S.A.* 2C:14–2b; and one count of endangering the welfare of a child in violation of *N.J.S.A.* 2C:24–4a.

On February 25, 1987, defendant appeared before the Law Division and retracted a prior not-guilty plea to one of the second-degree criminal contact counts and entered a plea of guilty. The guilty plea was the product of a plea bargain under which the prosecutor agreed to dismiss the other four charges pending against defendant. The State agreed that defendant would be exposed to a "five-year maximum period of incarceration * * *, and the State [would] not seek[ ] a minimum parole ineligibility term." The prosecutor then approached the bench and presented the court with the original of the written plea agreement.

The court questioned defendant about the specifics of the five-count indictment that was before the court and defendant's intention to plead guilty to Count Two, charging him with sexual assault involving a child victim. The court asked defendant if he understood that the charge was a second-degree offense with a possible parole ineligibility term of five years but that as a result of the plea there would be a recommendation that the sentence not exceed five years maximum, and that there be no parole ineligibility term. (Under such a sentence, defendant would be eligible for parole after serving one-and-two-thirds years.) The court specifically asked defendant, "Has anybody forced you, threatened you, or put you under any pressure to get you to plead guilty?", to which defendant answered, "No, sir." The court asked defendant if he understood that he was giving up his rights to remain silent, to trial by jury, and to confront witnesses, to which defendant replied, "I understand that." The court asked if defendant had gone over the plea agreement with his attorney. Defendant stated that he had gone over it with him "very thoroughly," and that

he was satisfied with his attorney's service. The court then asked defendant if he could read, write, and understand English, and if he understood all of the questions on the form, to which defendant answered, "Yes, I can," and that he had read all of the questions and answers on the form. Specifically, the form included the question whether, in view of all of his answers of understanding, he intended to enter a plea of guilty to the specific charge and "Are you in fact guilty of that charge?" Defendant's answer was "Yes."

The court then asked defendant whether he understood that once the court accepted this plea, it was an irrevocable act. The court told defendant, "Ten minutes from now you can say, 'I change my mind. I don't want to plead guilty,' [but] it will be too late." Defendant replied, "I understand."

The court then elicited the factual basis for the plea with regard to the charge of sexual assault in the second count. Defendant stated that he grabbed the child "on the rear end." The court asked how old the child was, to which defendant answered, "Six, I believe." Defendant explained that the girl was in his house, in front of the refrigerator, when he wanted a bottle of soda. Rather than asking the child to move from in front of the refrigerator, he "just grabbed her by her rear end." The court then applied the statute to the facts:

THE COURT: I need the statute. The statute reads sexual contact is for "the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." Why did you grab the girl?

THE DEFENDANT: For my own pleasure.

THE COURT: What pleasure, sexual pleasure?

THE DEFENDANT: Yes.

THE COURT: How many times did you do that?

THE DEFENDANT: Just once, Your Honor.

THE COURT: Do you have any questions now [that] you want to ask me or anybody else?

THE DEFENDANT: No.

THE COURT: Any questions, gentlemen?

[DEFENSE COUNSEL]: I have nothing, Judge.

[THE PROSECUTOR]: No, Your Honor.

THE COURT: All right. I am satisfied that the defendant understands the nature of the charges, that his plea is voluntary. He understands his rights and his obligations and responsibilities. The plea of guilty is going to be entered. I will order a presentence investigation report. I also need an Avenel report.

On March 27, 1987, defendant moved to set aside his plea of guilty, submitting to the court an affidavit that he was innocent and did not understand the charges when he pled guilty. He said that he lied when he stated that he received sexual gratification from the contact. Defendant further claimed that in the past he had been predisposed to "take the easy way out." However, after discussions with his pastor, family, and friends, he decided that he could not truthfully and morally admit to a crime that he had not committed. He asserted that it would be a manifest injustice not to permit him to withdraw his plea. On the return date of the motion, May 1, 1987, defendant said:

I would just like to say that, when I said that I did something, I was committing perjury. I was lying at the time. And that it's really stupid, you know, when I was thinking about it to say that you did something that you didn't do, just to make everything easier on everybody else, to move the process along. That's what I did. I said I did something that I didn't do. And that's all that I have to say about the matter.

The court did not have a transcript of the plea proceedings but recalled the circumstances of the plea, although not the exact words that it used. It recalled that the plea was entered under oath: "And there is no question in my mind that he satisfied [me] in telling me about the situation, he satisfied me that he did, in fact, commit the offense." The court recognized that on a motion to set aside it must consider whether the plea was truthfully or voluntarily entered. It took account of the fact that every defendant is under pressure, saying, "[T]here is nothing here that indicates that this defendant was under any undue pressure or force by anyone, including [his counsel]."

Having concluded that there were insufficient reasons to permit the withdrawal of the plea, the court then sentenced defendant to a five-year jail term and ordered him to pay a $30.00 penalty to the Violent Crimes Compensation Board.

On appeal, the Appellate Division, in an unpublished opinion, reversed the judgment and vacated the sentence of the Law Division. That court found that "defendant's recital of the events was inconsistent with his plea" and, although conceding that the factual elements of the sexual assault were set forth by defendant, discounted his testimony because the statement regarding sexual pleasure came in response to a leading question by the trial court. After reviewing the transcript, the Appellate Division could only conclude that defendant "was moving the little girl away from the refrigerator in order to open the door to get a bottle of soda. Instead of telling her to move, he moved her." We granted the State's petition for certification. 117 *N.J.* 35, 563 *A.*2d 807 (1989).

## II

In two recent cases, *State v. Warren*, 115 *N.J.* 433, 558 *A.*2d 1312 (1989), and *State v. Barboza*, 115 *N.J.* 415, 558 *A.*2d 1303 (1989), we have reviewed the standards for acceptance of guilty pleas. There is no need to repeat those discussions here. Suffice it to say that we have been very sensitive to the requirement that there be an adequate factual basis for a plea of criminal guilt. After all, a guilty plea is the final relinquishment of the most cherished right—to be presumed innocent of crime until a jury of one's peers has determined guilt beyond a reasonable doubt. As we stated in *State v. Taylor*, 80 *N.J.* 353, 361–62, 403 *A.*2d 889 (1979), inasmuch as a defendant who pleads guilty forfeits that constitutional right, he should be fully aware of the consequences of his plea. That view echoes Justice Brennan's dissent in *Parker v. North Carolina*, 397 *U.S.* 790, 90 *S.Ct.* 1458, 25 *L.Ed.*2d 785 (1970), in which he wrote:

> [G]rave consequences * * * attach to [defendant's] plea of guilty; for the plea constitutes a simultaneous surrender of numerous constitutional rights * * *. Indeed, * * * a guilty plea is more serious than a confession because it is tantamount to a conviction. [*Id.* at 800–01, 90 *S.Ct.* at 1475, 25 *L.Ed.*2d at 794 (citations omitted).]

■ Even if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea. "In New Jersey, except in capital cases, the trial court must be 'satisfied from the lips of the defendant that he committed the acts which constitute the crime.' " *Barboza, supra,* 115 *N.J.* at 422, 558 *A.*2d 1303 (quoting *State v. Stefanelli,* 78 *N.J.* 418, 439, 396 *A.*2d 1105 (1979) (Schreiber, J., concurring)). Our Rules of court require that the court must independently satisfy itself "that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." *R.* 3:9–2. The Rule further provides that if the guilty plea is refused, no admission made by the defendant shall be admissible in evidence against him or her at the trial.

■ The Appellate Division was understandably troubled in this case by the fact that defendant furnished the factual basis for the plea as a result of leading questions. The trial court had no choice, however, but to satisfy itself that defendant was admitting the distasteful reality that makes the charged conduct criminal. It is not the kind of thing that people like to admit. Nonetheless, we are satisfied that taken in the context of the entire plea colloquy—the rather extensive discussion between the court and defendant concerning the written plea agreement that defendant signed and defendant's consultations with his attorney—there was an adequate factual basis for the plea.

### III

■ Inasmuch as there was an adequate factual basis for the plea, the remaining question is whether the trial court erred in refusing to permit defendant to withdraw his plea. *Rule* 3:21–1 specifies that "[a] motion to withdraw a plea of guilty * * * shall be made before sentencing, but the court may permit it to

be made thereafter to correct a manifest injustice." *See State v. Taylor, supra,* 80 *N.J.* at 360, 403 *A.*2d 889.

"[A] guilty plea voluntarily entered may not be withdrawn except pursuant to leave granted in the exercise of the trial judge's discretion." *State v. Huntley,* 129 *N.J. Super.* 13, 16, 322 *A.*2d 177 (App.Div.), *certif. den.,* 66 *N.J.* 312, 331 *A.*2d 12 (1974). "However, where before sentence the defendant asserts his innocence and seeks to withdraw his plea and proceed to trial, the courts in our State, in practice, generally exercise their discretion liberally to enable withdrawal of the plea and a trial on the merits * * *." *State v. Deutsch,* 34 *N.J.* 190, 198, 168 *A.*2d 12 (1961).

In *State v. Huntley, supra,* 129 *N.J. Super.* 13, 322 *A.*2d 177, a case strikingly similar to this in that it involved criminal sexual contact, the court considered the circumstances under which the *Deutsch* standards should be applied. That court noted that in *Deutsch* a plea bargain was not involved and the matter was remanded to the trial court to supplement the inadequate record that prevented the Supreme Court from determining whether the trial court abused its discretion in denying a motion to withdraw the guilty plea.

> Thus, it is clear that the burden rests on defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits, so the trial judge is able to determine whether fundamental fairness requires a granting of the motion. Any other approach would automatically require a trial judge to grant such motions, and strip him of any discretion in the matter. Liberality in exercising discretion does not mean an abdication of all discretion. [*State v. Huntley, supra,* 129 *N.J.Super.* at 17, 322 *A.*2d 177.]

All plea-bargain jurisprudence recognizes the important interest of finality to pleas. As the *Huntley* opinion notes, "defendant's burden of presenting a plausible basis for his request to withdraw his guilty plea is heavier" when the plea is entered pursuant to a plea bargain. *Id.* at 18, 322 *A.*2d 177, *quoted in State v. Rodriguez,* 179 *N.J. Super.* 129, 136, 430 *A.*2d 957 (App.Div.1981); *see also State v. Thomas,* 61 *N.J.* 314, 322, 294 *A.*2d 57 (1972) ("[A]fter the [plea bargain] agreement has

received final judicial sanction, it will be carried out according to its terms."). Obviously, absent unfair prejudice to the State or unfair advantage to the accused, the arguments against permitting withdrawal of a plea prior to sentencing weaken considerably and the test of what constitutes a fair and just reason should be commensurately less demanding. *See* 2 *ABA Standards for Criminal Justice,* Standard 14–2.1(a) (1980). Nonetheless, the measure of what constitutes fair and just reason for withdrawal must be reposed in the sound confidence of the court. In this case, there was an understandable change of mind by defendant, but little more to commend itself to the discretion of the court.

Here, as in *Huntley, supra,* 129 *N.J. Super.* at 17, 322 *A.*2d 177,

> [t]he record is abundantly clear that when defendant's guilty pleas were entered the trial judge carefully and fully complied with the mandates of *R.* 3:9–2. After defense counsel had assured the trial judge that defendant's guilty pleas were made voluntarily and knowingly after full consultation with him, the trial judge personally inquired of defendant as to the voluntariness of his execution of Form 13A (the plea agreement form). When questioned by the trial judge, * * * [d]efendant readily admitted his [sexual act] as described to him by the trial judge. [Footnote omitted.]

Here, as there, defendant's "late protestations of innocence * * * on the [sexual] charge were found to be unworthy of belief, and were properly rejected by the trial judge." *Id.* at 18, 322 *A.*2d 177.

## IV

 We adhere to the principle that defendant should be permitted to withdraw from a plea if all of its material terms and relevant consequences were not fully understood. *State v. Howard,* 110 *N.J.* 113, 539 *A.*2d 1203 (1988); *State v. Kovack,* 91 *N.J.* 476, 453 *A.*2d 521 (1982). This is not a case like *State v. Nichols,* 71 *N.J.* 358, 365 *A.*2d 467 (1976), in which the court and the prosecutor actually misinformed the defendant about his exposure to criminal sanctions under existing law. Nor is this a case in which an adequate factual basis for the plea was not

established in the record. *State v. Barboza, supra,* 115 *N.J.* 415, 558 *A.*2d 1303.

■ Although the issue is not squarely presented, inasmuch as the material was not considered by the trial court, the State seeks to buttress the reliability of the plea proceedings by referring to certain statements obtained from the child victims. A "defendant's admission or acknowledgement may be [best] understood in light of all [the] surrounding circumstances." *State v. Sainz,* 107 *N.J.* 283, 293, 526 *A.*2d 1015 (1987). In evaluating whether a manifest injustice had occurred in the circumstances of a case like this and the voluntariness of defendant's prior plea in light of a later claim of innocence, a court might well consider (for that limited purpose) the evidence that was available to the prosecutor and to the defendant through our discovery practices at the time the defendant entered the plea of guilt. In some cases the proffered evidence may serve to rebut the assertion of innocence; in others, it may move a court to vacate the plea to the end that justice be done.

We reiterate the important interest of finality to pleas. These child-sexual-assault cases are extremely difficult, both for the defendants and the victims. Courts taking pleas are undoubtedly conscious of the need to end the suffering. This trial court tried to balance the interests of finality and fairness to the defendant by fully alerting him to all relevant consequences. This record clearly indicates that the plea of guilty was the product of a free and rational choice, made with the advice of competent counsel. There has been no showing that there may have been a miscarriage of justice.

The judgment of the Appellate Division is reversed. The sentence and judgment of the Law Division are reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.