896 A.2d 480 (2006)
385 N.J. Super. 129
STATE of New Jersey, Plaintiff-Respondent,
v.
Jose PINEIRO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 28, 2006.
Decided April 19, 2006.
*481 Yvonne Smith Segars, Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, of counsel and on the brief).
Zulima V. Farber, Attorney General, attorney for respondent (Robyn M. Mitchell, *482 Deputy Attorney General, of counsel and on the brief).
Before Judges COBURN, COLLESTER and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Charged with absconding from parole, N.J.S.A. 2C:29-5b, defendant Jose Pineiro entered a plea of guilty on the second day of trial, after the jury was selected and sworn. Almost a month later, prior to sentencing, defendant filed motions to withdraw his guilty plea, to relieve assigned counsel, and to proceed pro se. The trial judge denied the motions and sentenced him to five years imprisonment with a two and one-half year parole bar, to be served concurrent to any sentence imposed for violation of parole.

I
These are the most pertinent facts. On September 21, 2001, defendant was convicted for conspiracy to possess a controlled dangerous substance with intent to distribute and was sentenced to three years in prison. He was paroled on March 14, 2002. On April 23, 2002, he was indicted for absconding from parole.[1]
Before trial, defendant's counsel advised the trial judge that defendant refused to wear street clothes and insisted on appearing before the jury in his prison clothing. On the second day of trial, defense counsel told the judge that he had refused his client's request to file a motion to dismiss the indictment, and that defendant was dissatisfied with his representation. Defendant had also rejected a plea offer of three years "flat" because it would not include credit for time served after he was returned to prison for parole violation. After defense counsel explained to the judge his understanding that jail credit was not available in this situation, the judge asked if the jury should be recalled. The following colloquy took place among the court, defense counsel, and defendant, who was speaking through an interpreter:
THE COURT: Shall we recall the jury?
MR. SMITH: Do you want to enter a plea or do you want to proceed to trial?
MR. PINEIRO: Whatever plea you want to give me now, give it to me, I'll go.
MR. SMITH: Judge, I'm not sure what Mr. Pineiro is asking. Perhaps you can inquire as to whether or not he wishes to enter a plea at this point or proceed to trial....
INTERPRETER: Tell him that I don't want to go to trial and I'll plead.
THE COURT: I am not inclined at this point to accept this defendant's plea of guilt. I am convinced that this trial should proceed in this defendant's interest. There is a single charge, it is a straightforward charge, and I am not able to imagine at this point this defendant entering ... an acceptable credible, honest factual basis for the plea, and without such a basis, I am not permitted to accept [a] plea of guilty.
After explaining to the court that his client was "obviously extremely distraught," defense counsel requested a break to speak to his client. The judge agreed, reminding counsel that
I will not accept a plea should your client explain ... that he is doing this to get it over with, that he doesn't like his lawyer, that he doesn't understand ... [U]nless he is prepared to be sworn and *483 offer a factual basis which in his own words establishes his guilt freely, voluntarily, soberly, I will not accept the plea.
After the break, defendant advised the court that his client wished to plead guilty "without a plea bargain." The prosecutor agreed, after reiterating on the record that defendant was "extended-term eligible" and "could conceivably receive a 10-year state prison sentence with a 5-year parole ineligibility."
The judge then addressed the defendant:
Q: Why do you now wish to plead guilty in the middle of this trial?
A: Okay, Your Honor, I know that in thisin this case and this indictment, okay, I never report I move from room 9 to Wildwood, I never see my parole officer, I never called him, nothing, Your Honor. I know I'm guilty.
The judge read the indictment to defendant, who indicated that he understood it and wished to plead guilty to absconding. When asked if he had consumed any "medicine or other substance that might affect your ability to think clearly," defendant responded that he took "psych medication." He indicated that he took the medication at night and "had one last night but not today." The purpose of the medication, according to defendant was "to sleep at night, and also to keep me calm so that I don't ... hear voices." But he indicated that he was "thinking clearly now."
The following factual basis was then placed on the record:
BY MR. SMITH:
Q. [O]n August 6th of 2001 were you placed upon parole as a result of a conviction that you received in Cape May County?
A. Yes.
Q. At the time you were placed under parole you were given certain rules and regulations that you were to comply, is that correct?
A. Yes.
Q. And, in fact, you signed a certificate of parole indicating what the conditions of your parole would be, is that correct?
A. Yes.
Q. You understood those conditions when you signed it?
A. Yes.
Q. One of those conditions was that you were to report to your parole officer, is that correct?
A. Yes.
Q. And subsequent to signing those parole conditions did there come a period of time during March and April of 2002 when you failed to report to your parole officer?
A. Yes.
Q. Did therewas there also a condition of your parole that was explained to you that you were to report to your parole officer or to the parole office any change in residence?
A. Yes.
Q. And did there come a time when you were living at the Economy Motel, which was your approved residence in Cape May County, and that you moved from that residence?
A. Yes.
Q. And did you fail to report that change of residence
A. Yes.
Q. to your parole officer?
A. Yes.
The trial judge then asked defendant why he failed to report the change of residence, leading to the following exchange:

*484 THE COURT: Why did you fail to report the change?
MR. PINEIRO: Your Honor, I had a lot of things on my mind at that time. When I came out from prison they suppose...
INTERPRETER: When I got out of jail they were supposed to give me a medication to hold me over for a month. I didn't have that medication. I had no money to buy food to eat. I had no money to take transportation. They wanted me to go to the welfare office but I have a record. I have a criminal record and welfare doesn'tand welfare is not going to help me because of the record that I have. And that was one of the reasons why I went to Wildwood, and I tried to survive the best way I could, but I didn't look for any problems and I didn't hide. I never hid. I never left the state, I keptI stayed in Wildwood.
BY MR. SMITH:
Q. But you also didn't call your parole
A. Yes, that's true.
Q. officer, correct?
A. That's true, I never called my parole officer, that's true.
Q. Andand you
THE COURT: Never wrote.
MR. PINEIRO: Hmm?
THE COURT: Never wrote?
MR. PINEIRO: I'll be honest with you, I did try to call him a couple times but every time I call him he never in the office or else I'll forget and I never call him back, you know.
THE COURT: Anything else?
MR. SMITH: No, Your Honor.
THE COURT: Anything else?
MR. CARROCCIA: Well, I don't know if it's going to be a problem but, you know, what he's saying is that he violated his parole, not necessarily he absconded. Absconded means that he did hide, he did go into hiding and he did it to avoid supervision. He's saying he didn't hide and, frankly, it's my fault, Your Honor, I would have asked Mr. Smith to ask him if when he did go into hiding he did it to avoid supervision. What he said was that he violated his parole. They often obviously go hand in hand but he just said he didn't hide.
THE COURT: Well, they're not necessarily the same thing.
MR. CARROCCIA: Correct.
THE COURT: Mr. Smith
MR. SMITH: Judge, I believe he's satisfied the factual basis. The statute makes it unlawful for him to fail to report and or to
MR. PINEIRO: Communication to parole.
MR. SMITH:or to go into hiding with the purpose of avoiding supervision. The case law that I have read indicates that there is ... an inference that can be drawn by the fact if one fails to report and by the fact that one fails to notify the change of residence, that that purpose was, in fact, to avoid the ramifications of parole, and I believe he's indicated a factual basis for that.
QUESTIONING BY THE COURT:
Q. Mr. Pineiro
A. Yes.
Q. when you were living at the Econolodge?
MR. SMITH: Economy Motel.
BY THE WITNESS:
A. Yes.
Q. Economy Motel?
A. Mm-hmm.
Q. Yes?
A. Yes.

*485 Q. Okay. Were you working at the time?
A. No, Your Honor ...
Q. Okay. Let me ask my
A. Okay.
Q. question. Who was helping you pay the rent there?
A. Okay, Your Honor, when I came in from the street [my] parole officer gave me a check for $150 so I can pay the rent in the room. That room cost a week $150.
Q. Okay. And you stayed at the Economy Hotel how long?
A. I stay for a week.
Q. Okay. At the end of that week where did you go?
A. I go to WilYour Honor, three days I stay in Wildwood.
Q. Okay. And you failed to tell your
A. Ithat's
Q. parole officer?
A. Yes, I failed to my parole officer tocommunication to my parole officer to tell him I moved.
Q. Did you know that by not telling your parole officer that you had moved he or she would not be able to find you?
A. I know, Your Honor. Yes, Your Honor.
THE COURT: Okay. Anything else?
MR. CARROCCIA: Your Honor, it's up to your discretion. He said he wasn't hiding. That's part of the indictment. The State acknowledges he didn't leave the State. They have to go into hiding to avoid supervision. I certainly don't want to make thisdrag this out, it's been a day-and-a-half, but he said he did not hide.
MR. SMITH: Judge, the statute doesn't say that he has to hide by putting [himself] in a dark closet.
THE COURT: I am satisfied, counsel, of the following. The model jury charge specifically, as it relates to the second of the three elements of the offense, relates to the element of hiding or leaving the state, and the jury charge which I would have presumptively been required to read to the jury states in pertinent part, and I'll quote,
"Hiding means to conceal one's whereabouts. It is not enough for the State to prove only that the defendant failed to keep appointments with his parole officer."
This record contains more facts than mere failure to keep appointments with parole officer[s].
This defendant has testified that he knew that by failing to contact his parole officer, his parole officer would not be able to find him. I'm satisfied that that satisfies the "intent" component, the "intent to hide" component of this offense. In the absence of any further questions, I am prepared to make findings of fact and conclusions of law.

II
Defendant appeals, raising the following issues:
POINT I: DEFENDANT'S PLEA WAS NOT SUPPORTED BY AN ADEQUATE FACTUAL BASIS AND WAS NOT VOLUNTARILY ENTERED.
POINT II: DEFENDANT HAD A CONSTITUTIONAL RIGHT TO PROCEED PRO SE, AND THE COURT'S DENIAL OF HIS APPLICATION TO BE RELIEVED OF ASSIGNED COUNSEL THUS WAS ERRONEOUS.
POINT III: DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE.

*486 POINT IV: DEFENDANT'S FIVE YEAR SENTENCE, WHICH EXCEEDED THE THEN-EFFECTIVE PRESUMPTIVE TERM FOR THIRD DEGREE OFFENSES BY ONE YEAR, IS UNCONSTITUTIONAL.
Defendant's primary contention is that his plea was not supported by an adequate factual basis. A court may accept a guilty plea only after personally addressing the defendant and determining "by inquiry of the defendant ... that there is a factual basis for the plea." R. 3:9-2; State v. Smullen, 118 N.J. 408, 415, 571 A.2d 1305 (1990). The requirement is designed in part to protect a defendant who is willing to plead guilty "`without realizing that his conduct does not actually fall within the charge.'" State v. Barboza, 115 N.J. 415, 421, 558 A.2d 1303 (1989) (citation omitted). As the Supreme Court stated in State v. Sainz, 107 N.J. 283, 526 A.2d 1015 (1987), "[t]he essential thing is that the defendant is in fact guilty of the crime for which he is being sentenced." Id. at 292, 526 A.2d 1015. To that end,
[t]he factual basis for a guilty plea must obviously include defendant's admission of guilt of the crime or the acknowledgement of facts constituting the essential elements of the crime.
[Id. at 293, 526 A.2d 1015.]
The crime of absconding from parole consists of the following:
A person subject to parole commits a crime of the third degree if the person goes into hiding or leaves the State with a purpose of avoiding supervision ... Abandoning a place of residence without the prior permission of or notice to the appropriate supervising authority shall constitute prima facie evidence that the person intended to avoid such supervision.
[N.J.S.A. 2C:29-5b; emphasis added.]
The crime consists of two distinct elements:
(1) the act of "go[ing] into hiding or leav[ing] the State," and (2) the intent of "avoiding [parole] supervision." The "[ab]andoning [of] a place of residence" without prior permission or notice provides "prima facie evidence" of only the second element of this offense.
[State v. Graham, 284 N.J.Super. 413, 414, 665 A.2d 769 (App.Div.1995), certif. denied, 144 N.J. 378, 676 A.2d 1092 (1996); citation omitted.]
Whereas parole revocation is not considered a criminal proceeding, "[p]rosecution for absconding from parole under N.J.S.A. 2C:29-5b, on the other hand, is clearly intended to punish violators of that criminal code provision." State v. Black, 153 N.J. 438, 452, 710 A.2d 428 (1998). Proof of intent to avoid parole supervision is critical to a conviction:
The critical element of the absconding offense is the act of going into hiding or leaving the state for the purpose of avoiding parole supervision. In contrast, the mere finding of a violation of a condition of parole, absent any showing of the parolee's intent, can constitute a basis for revocation of parole. Clearly, the crime of absconding from parole is intended to reach conduct evincing a higher level of culpability than that minimally sufficient for the administrative sanction of parole revocation. The targeted conduct of the crime of absconding from parole evokes parallels to the crime of escape. It is only the purposeful avoidance of parole supervision that the legislature determined to criminalize for the purposes of deterrence and retribution.
[Id. at 453, 710 A.2d 428; citation omitted.]
Hiding consists of something more than merely leaving an assigned residence:

*487 [T]he abandonment of an approved residence without permission or notice would not by itself constitute "go[ing] into hiding." For example, if a parolee left a drug treatment facility and returned to a permanent residence known to parole officials, that act could not reasonably be described as "a withdrawal from one's usual haunts to evade authority." To the contrary, such a parolee could be said to have returned to his "usual haunts." Thus, even though the abandonment of an approved residence would be a violation of a condition of parole that could justify a revocation of that parole, it would not constitute the predicate act required to convict a parolee of absconding. Instead, the State would have to show that after leaving an approved residence, the parolee somehow attempted to avoid parole supervision or apprehension, such as by residing at a location that was unknown to parole officials and failing to communicate with them.
[Graham, supra, 284 N.J.Super. at 416, 665 A.2d 769.]
Defendant contends that his guilty plea did not include the essential elements of intentional "hiding" or "purposeful avoidance of parole supervision," and that his statements at the plea hearing actually negated these elements. Black, supra, 153 N.J. at 452, 710 A.2d 428. In considering his contentions we first review two somewhat similar cases, State v. Eisenman and State v. Graham.
In State v. Eisenman, 153 N.J. 462, 710 A.2d 441 (1998), the defendant, who had been paroled on condition that he spend a year at a residential drug program, left the program after a month "and thereafter had no contact with parole authorities until his arrest...." Id. at 465, 710 A.2d 441. He pled guilty to absconding from parole. The Supreme Court, sua sponte, raised the issue of the sufficiency of the plea and found the following colloquy to be "barely sufficient to establish a violation of N.J.S.A. 2C:29-5b," id. at 470, 710 A.2d 441:
Q. All right, the indictment charges on escape, March 26, 1993 you did commit the crime of escape by absconding from parole that was imposed three different times, September 25, [19]87 and December 4, [19]87 and November 18, [19]88. Tell me what happened?
[A.] I was released on parole to the Institute of Human Development Drug Program. I was there for about 31 days. I was on a furlough. I came back several hours late. They said they were going to dismiss me from that program and that they, I guess, notified my parole officer at which time I packed and left.
Q. You left. Did you ever contact your parole officer after that?
A. No, sir.
Q. How long were you supposed to be there?
A. They said a year.
Q. A year. And how long were you there?
A. Thirty-one days, approximately that.
Q. And then you had no contact with anybody in parole until you were picked up in May?
A. Correct.
Q. And that is when you were picked up on the Garden State Parkway?
A. Yes.
[Id. at 471, 710 A.2d 441.]
The Court concluded:
[w]e are satisfied that defendant's answers to the court's questions were minimally sufficient to establish a factual basis from which the court could conclude *488 that defendant purposefully avoided parole supervision after leaving the Institute of Human Development Drug Program.
[Ibid.]
In State v. Graham, supra, defendant successfully moved to dismiss his indictment for absconding, and the State appealed. We first reviewed the extremely deferential standard applied in judging the sufficiency of an indictment:
"An indictment should not be dismissed unless its insufficiency is palpable." Consequently, "[i]n determining the sufficiency of the evidence to sustain the indictment, every reasonable inference is to be given to the State." "[T]he evidence need not be sufficient to sustain a conviction, but merely sufficient to determine that there is prima facie evidence to establish that a crime has been committed." Therefore, a defendant who challenges an indictment must "demonstrate that evidence is clearly lacking to support the charge."
[Graham, supra, 284 N.J.Super. at 416, 665 A.2d 769; citations omitted.]
Applying that deferential standard, we concluded that the following facts were insufficient to sustain defendant's "heavy burden," id. at 417, 665 A.2d 769, to overturn the indictment:
The State presented evidence to the grand jury that defendant not only left the drug rehabilitation program to which he had been paroled but also deliberately evaded parole officials for the next six months. This evasion took the form of defendant failing on two occasions to comply with the parole officer's demands that he "turn himself in" and fleeing on four occasions from parole officers and/or other law enforcement officials when they encountered him on the streets of Asbury Park. Such conduct provided a more than adequate foundation for the grand jury to infer that defendant concealed himself for a substantial period of time in order to evade parole supervision.
[Id. at 417, 665 A.2d 769.]
We next consider the facts of this case, viewed in light of Eisenman and Graham. Up to the point at which the judge asked defendant why he left the motel, defendant's statements arguably set forth a factual basis as "minimally adequate" as that in State v. Eisenman, supra. Like the defendant in Eisenman, he left his assigned place of residence and failed to notify his parole officer of his whereabouts, thus triggering the statutory rebuttable presumption that he "intended to avoid such supervision." N.J.S.A. 2C:29-5b. But defendant's subsequent explanation for leaving the motel and failing to notify his parole officer negated the presumption. Defendant explained that he became homeless because he did not have his medication, and could not afford to live in the motel on the $150 the parole officer gave him. Further, once he was homeless, he tried unsuccessfully to call his parole officer "a couple times but ... he [was] never in the office." He stated unequivocally that "I never hid."
The subsequent efforts by the court and counsel to salvage the plea were unavailing. The facts that defendant "failed" to communicate with his parole officer and that he knew "that by not telling your parole officer that you had moved he or she would not be able to find you," are not a sufficient factual basis in light of the other exculpatory information that defendant placed on the record. Taken in context, his statements established that he was penniless, mentally ill, needed psychiatric medication that he did not have, and that he tried unsuccessfully to contact his parole officer once he was living on the streets of Wildwood. Unlike the defendant *489 in Graham, he did not resist demands to turn himself in or repeatedly flee from his parole officer.
While we understand the frustration that the trial judge and counsel may have experienced in dealing with an obviously difficult defendant, the record does not satisfy us of the most essential criteria of a guilty plea: "that the defendant is in fact guilty of the crime for which he is being sentenced." State v. Sainz, supra, 107 N.J. at 292, 526 A.2d 1015. We imply no criticism of the trial judge in asking questions after defendant initially stated the factual basis for the plea. The judge was quite properly attempting to fulfill his obligation to "independently satisfy [himself] `that there is a factual basis for the plea.'" State v. Smullen, supra, 118 N.J. at 415, 571 A.2d 1305. But when it became clear that defendant denied an essential element of the crime, the judge should have followed his initial instinct and refused to accept the plea.
Consequently, we vacate the conviction and the sentence and remand this case for further proceedings consistent with this opinion. State v. Barboza, supra, 115 N.J. at 427, 558 A.2d 1303. In light of our disposition we need not address defendant's remaining contentions.
Reversed and remanded.
NOTES
[1] Defendant was also administratively charged with violating parole and was returned to prison to serve the remaining portion of his original sentence.