**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1453-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

QUAWEE L. JOHNSON,

    Defendant-Respondent.

_____

Argued June 9, 2021 – Decided July 15, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 19-05-1321 and 19-05-1532.

Frank J. Ducoat, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the brief).

PER CURIAM

Prior to sentencing, defendant Quawee L. Johnson successfully moved to withdraw his guilty pleas to one third-degree offense and two second-degree offenses under two separate indictments. On leave granted to appeal, the State contends the motion judge abused her discretion and seeks reversal and remand for sentencing. We disagree and affirm.

I.

On May 14, 2019, defendant and a co-defendant were indicted under Indictment 19-05-1321 for third-degree conspiracy to commit the crime of receiving stolen property, N.J.S.A. 2C:5-2 and 2C:20-7(a), and third-degree receiving stolen property, N.J.S.A. 2C: 20-7(a), related to possession of a stolen motor vehicle in February 2019. Approximately three weeks later, defendant and a different co-defendant were indicted under Indictment 19-06-1532 for second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and 2C:12-1(b)(1), and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), related to a March 2019 incident.

In November 2019, defendant entered into a global plea agreement with the State resolving both indictments, pleading guilty to third-degree receiving stolen property, second-degree conspiracy to commit aggravated assault, and

second-degree aggravated assault. In exchange, the State agreed to recommend an aggregate prison sentence of six years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and dismiss the remaining charge of third-degree conspiracy to commit the crime of receiving stolen property. Defendant's pleas were accepted by the plea judge because, among other reasons, he did not express any doubt about his knowing and voluntary decision to plead guilty and set forth an adequate factual basis for his pleas.

In February 2020, defendant's sentencing was postponed after he informed the judge for the first time that he did not view a surveillance camera video of the aggravated assault incident. Defendant informed the judge, who had also accepted his pleas:

> I just wanted to say that as far as like my discovery and all of that, I haven't received that. The video [defense counsel] gave me I never got to really see it. She told me I was going to get [twenty] years on this charge, and only [ten] years if I go to – if I don't take the plea or whatever the case may be . . . .
>
> I never seen information on [the second-degree aggravated assault charges]. All I know, [the co-defendant is] telling on me.[1] What do they have on me? I could take that to trial. That's what I'm saying. I got – [defense counsel] shook me up, but all that time sitting – I need to see all of the proof.

---

[1] Co-defendant gave a statement implicating defendant in the assault.

A-1453-20

When the judge further inquired about the video, defendant replied: "I never seen anything"; "I never seen any of that"; and "I honestly didn't see anything." The judge adjourned the sentencing to give defendant time to consult with counsel.

Sentencing was continued five months later to July 2020. However, it was postponed again due to defendant's new claim that he just received the video five days earlier and had not viewed it. The judge expressed doubt about defendant's claim but directed him to file a motion to withdraw his guilty pleas within one week.

Represented by new counsel, defendant moved to withdraw his guilty pleas based on his inability to view the video of the aggravated assault. At the motion hearing, Judge Sharifa R. Salaam questioned defendant regarding his confusing remarks at his initial sentencing hearing in February 2020, that he had the video but claimed he had not watched it. Defendant replied that he told his first counsel he was unable to view the video that was on a flash drive, yet counsel did not address the issue until five days before the adjourned sentencing date in July 2020. He added that when he could not view the video, he told the plea judge at the first opportunity in February 2020.

4

Regarding his remarks to the plea judge establishing his guilt, defendant stated: "I just said yes because that's what my counsel told me to do, is [say] yes to all the questions [the judge] asked. She . . . said yes and I said yes or right." As to defendant's understanding of the plea proceeding, the following colloquy occurred:

> [DEFENDANT]: Yes, I was copping out to a charge because I know – but [my first counsel] said I was going to get that extended term. I'm not a career criminal, I didn't know. I cannot get no extended term. I have no jacket. This is what she was telling me, "You know, somebody's telling on you saying you did this. You're going to get the extended term."
>
>    . . . .
>
> THE COURT: So[,] when you were asked if you knew what you were doing [at the plea], did you know what you were doing on that day?
>
> [DEFENDANT]: I was copping out, ma'am.

When defendant was asked if seeing the video changed his opinion on whether he would like to plead guilty, he stated, "[y]es."

Judge Salaam reserved decision, and a month later entered an order granting defendant's motion. In her written decision, the judge considered the four-factor balancing test set forth in State v. Slater, 198 N.J. 145, 157-58 (2009)

A-1453-20

to determine whether to allow defendant to withdraw his guilty pleas. <u>Slater</u> requires a trial court to weigh:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [<u>Ibid.</u>]

The judge determined "it [wa]s in the interests of justice to permit [d]efendant to withdraw his guilty plea." She held defendant's situation did not "neatly fit into" the <u>Slater</u> factors. Yet "an injustice" had been "done to [d]efendant" when he could not, for some reason, view all his discovery.

Before considering the <u>Slater</u> factors, the judge concluded:

> The record indicates that [defendant's] previous counsel received discovery, which was conveyed to [d]efendant. He was unable to view all the discovery files whether it be lack of access, corrupt files, or inconveniences caused by the pandemic. It is essential that [d]efendant at least have the opportunity to view the discovery in order to make an intelligent an[d] informed decision o[n] how to proceed with his case. Defendant has been made aware by counsel of the potential consequences that he would face by going to trial.

In assessing the first <u>Slater</u> factor—colorable claim of innocence, the judge held it was "weak" because defendant was "unable to intelligently assess

6

his innocence" by viewing the video prior to pleading guilty. For similar reasons, the judge maintained the second Slater factor—reasons for withdrawal––weighed in favor of defendant being allowed to withdraw his pleas. The judge found defendant "lacked the resources to assess the evidence against him." The judge did not assign "great weight" to the third Slater factor—existence of a plea bargain. Regarding the fourth Slater factor—unfair prejudice to the State—the judge found that "the State would not suffer prejudice if . . . [defendant was allowed] to withdraw his plea of guilty." Thus, the judge concluded, this factor "weighs for" defendant's withdrawal of his plea.

## II.

The decision to grant or deny a motion to withdraw a guilty plea is governed by balancing the noted four Slater factors. See State v. Lipa, 219 N.J. 323, 331-32 (2014). "No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16–17 (2012) (quoting Slater, 198 N.J. at 162).

Before sentencing, a judge reviewing a plea withdrawal applies "the interests of justice" standard. R. 3:9-3(e). "Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea,

A-1453-20

constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Accordingly, "courts are to exercise their discretion liberally to allow plea withdrawals[]" and "[i]n a close case, the 'scales should usually tip in favor of defendant.'" State v. Munroe, 210 N.J. 429, 441 (2012) (second alteration in original) (quoting Slater, 198 N.J. at 156 and State v. Taylor, 80 N.J. 353, 365 (1979)). Nevertheless, the Munroe Court explained that "[l]iberality in exercising discretion does not mean an abdication of all discretion, and, accordingly, any plea-withdrawal motion requires a fact-specific analysis." Id. at 441-42 (internal quotation marks and citations omitted). Thus, we will reverse the trial court's determination of whether to allow a defendant to withdraw a guilty plea "only if there was an abuse of discretion which renders the [trial] court's decision clearly erroneous." Simon, 161 N.J. at 444 (citing State v. Smullen, 118 N.J. 408, 416 (1990)).

Guided by these principles, Judge Salaam did not abuse her discretion in granting defendant's motion as her decision is fully supported by her factual findings. This is a close call because the judge recognized defendant's colorable claim of innocence was weak. Indeed, the State argues defendant never presented a colorable claim of innocence and the strength and nature of his

reasons for withdrawal were poor. The State further stresses that its proofs are very strong based on the video and the co-defendant's statement. Nonetheless, the judge accepted defendant's representation that he would not have entered into the plea agreement had he viewed the video. We discern no reason to disagree.

The State has failed to persuade us that the judge improperly weighed the Slater factors. The judge adequately balanced the factors, stressing the importance of defendant being unable to view the video of the alleged aggravated assault in deciding whether he had any viable defenses. See, e.g., State v. Parsons, 341 N.J. Super. 448, 457 (App. Div. 2001) (holding in a pre-Slater case, that where a key piece of evidence was withheld from the defendant by the State, "we should not insist that the defendant proclaim his innocence in order to retract a guilty plea"). Based on the record before us, there is no reason to disturb the judge's ruling that the interests of justice weigh in favor of allowing defendant to withdraw his guilty plea.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1453-20