# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1450-25

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

TIFFANY R. JONES,

    Defendant-Respondent.

_____

Argued March 24, 2026 – Decided May 11, 2026

Before Judges Gilson and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Accusation No. 23-07-1277.

William Kyle Meighan, Supervising Assistant Prosecutor, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

Matthew W. Reisig argued the cause for respondent (Reisig Criminal Defense & DWI Law, LLC, attorneys; Matthew W. Reisig, of counsel; Jeffrey Zajac, on the brief).

PER CURIAM

We granted the State leave to appeal an October 23, 2025 order, which allowed defendant Tiffany Jones to withdraw her guilty plea to refusing to submit to a chemical breath test in violation of N.J.S.A. 39:4-50.4a. The trial court reasoned that defendant had not provided a valid plea because she did not expressly admit all the elements of a refusal charge. The record does not support the trial court's determination and, therefore, we reverse, vacate the October 23, 2025 order, and reinstate defendant's refusal conviction.

I.

At approximately 9:00 p.m. on August 30, 2022, several Jackson Township police officers responded to a Wawa convenience store on a report of a disruptive customer.[1] Once patrolman Zackary Rodina arrived, he observed defendant who was "cursing, screaming, and waving her arms in an aggressive manner." The officer tried to calm defendant down and when he spoke to her, he saw that she had "bloodshot, glassy, and watery eyes" and he smelled a "strong odor" of alcohol emanating from defendant's breath. Rodina also observed that defendant was "slurring her words, unable to maintain her balance,

---

[1] We discern certain of the facts from the reports prepared by two responding police officers. Those reports were submitted as part of the record and disclosed in discovery to defendant. Defendant does not dispute those facts.

A-1450-25

and screaming at the top of her lungs all while her [young] daughter was present."

Another responding officer, patrolwoman Jody Benecke, also observed that defendant's eyes were bloodshot and watery. Several witnesses reported to Benecke that defendant had become irate because her food was not prepared properly, had been "belligerent" towards employees and customers, and had attempted to leave in her red Lexus with her four-year-old child. Benecke also observed that the red Lexus was "parked partially in a spot in front of the" Wawa.

The officers placed defendant under arrest for disorderly conduct. Officers also searched defendant's vehicle and found two small bottles of vodka. Defendant was then taken to the township's police station, where she continued to "act out," refused to be fingerprinted, and refused to engage in sobriety tests.

Defendant was then asked to provide breath samples so that she could be chemically tested to determine the alcohol content of her blood. As part of that procedure, Rodina read to defendant the New Jersey Attorney General's Standard Statement for Motor Vehicle Operators (the Statement). The Statement informed defendant (1) she had "been arrested for driving while intoxicated," (2) she was required to submit breath samples to determine the

A-1450-25

alcohol content of her blood; and (3) the penalties for refusing to submit breath samples.

After reading the Statement to defendant, Rodina asked defendant if she would submit breath samples, but defendant refused. Rodina then read defendant the additional paragraph in the Statement and defendant again refused to provide breath samples, stating "F[] no."

While defendant was at the police station, a check of her motor vehicle records revealed that she had a prior conviction for refusing to submit to a breath test and she was required to have an ignition interlock device installed in her car. Defendant was thereafter charged with three criminal offenses, including second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). She was also charged with eight motor vehicle offenses, including driving while under the influence, N.J.S.A. 39:4-50, failure to install an ignition interlock device, N.J.S.A. 39:4-50.19, and refusal to submit to a breath test.

The following year and with the assistance of an attorney, defendant negotiated a comprehensive plea agreement. Under the agreement, defendant waived her right to be indicted and agreed to plead guilty to an accusation charging her with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). She also agreed to plead guilty to the refusal charge and a

4

violation of probation. In return, the State agreed to recommend that defendant be sentenced to probation, the standard penalties for refusal, and all other charges be dismissed.

On July 24, 2023, defendant pled guilty to endangering the welfare of a child and to a violation of probation. During the hearing on that date, the prosecutor explained the plea agreement, including defendant's agreement to plead guilty to the refusal charge at the time of her sentence. Defendant was then placed under oath, and she testified (1) she had heard and understood the terms of her plea agreement; (2) she had reviewed and signed the plea forms; (3) she had reviewed her plea forms with her counsel, and he had answered all her questions; and (4) she was pleading guilty because she was guilty.

On September 29, 2023, defendant appeared for sentencing on the criminal conviction. Before being sentenced, defendant pled guilty to the refusal charge. In pleading guilty, defendant was placed under oath, and she was asked and answered the following questions:

> Q    I'm going to ask you some questions about an incident that happened on August the 30th of last year, 2022, in Jackson. Is it correct on that date, you were on North County Line Road?
>
> A    Correct.

A-1450-25

Q     And that's around the area where the Wawa is located; is that right?

A     That is correct.

Q     And you had been driving a vehicle?

A     Correct.

Q     And at some point, officers stopped you and made contact with you; is that right?

A     That's correct.

Q     And they had some suspicion that you were - - you had been operating the vehicle under the influence of - -

A     That is correct.

Q     In this case, under the influence of alcohol, because they had seen, I think, a few shooters in the car.

A     That's correct.

Q     So then am I right in saying you went back to the police station where the officers asked you to do a Breathalyzer test?

A     That is correct.

Q     And at that point, you refused and said no?

A     Correct.

Q     They further gave you a piece of paper, a form, which basically explained the possible

6

A-1450-25

implications for saying no to that Breathalyzer; is that right?

A    Yes, they did.

Q    And, again, you said no at that point.

A.   I did.

Q    And you understand these actions, by refusing to submit to that Breathalyzer, is in violation of the motor vehicle code; is that right?

A    Yes.  I understand.

Q    Specifically, your refusal to submit to a chemical test.

A    I understand.

Q    And you're pleading guilty to that motor vehicle ticket because you are guilty.

A    Yes, I am.

The trial court accepted defendant's guilty plea to the refusal charge. Defendant was then sentenced to two years of probation on the endangering conviction.  On the refusal charge, defendant was sentenced to the loss of her driver's license for one year and to spend forty-eight hours in an educational program to avoid intoxication while driving.  Defendant was also required to install an ignition interlock device in her primary motor vehicle for two years

7

A-1450-25

and to pay fines, assessments, and costs. The court thereafter dismissed all other charges. Defendant did not appeal her convictions or sentences.

In 2025, defendant was indicted for driving while her license was suspended in violation of N.J.S.A. 2C:40-26(b). Because defendant's driver's license had been previously revoked two times for refusing to submit to a breath test, if convicted defendant will be sentenced to a mandatory prison term of at least 180 days. See N.J.S.A. 2C:40-26(c). In May 2025, defendant filed a petition for post-conviction relief (PCR) under which she sought to withdraw her guilty plea to the refusal charge that she had entered in September 2023. Thereafter, defendant withdrew her PCR petition and filed a motion to withdraw her guilty plea to the refusal charge.

On October 21, 2025, the same judge who had accepted defendant's plea heard the motion to withdraw the plea. Two days later, on October 23, 2025, the judge entered an order granting the motion. The judge also issued a written decision explaining the reasons for the ruling.

In the decision, the judge determined defendant's refusal plea was not supported by an adequate factual basis. The judge reasoned that defendant's admission that the officers had "some suspicion" she was driving under the influence, was insufficient to establish that before her refusal defendant had

been arrested for driving while under the influence based on probable cause. In that regard, the judge reasoned: "Probable cause requires specific and articulable facts, where 'some suspicion' is vague, ambiguous, and insufficient for establishing probable cause." Accordingly, the judge found that the first element required for a refusal conviction was not met.

The judge also determined that the second element for a refusal conviction — that is, that defendant was arrested for driving while intoxicated — was also not established. The judge reasoned: "Merely stating that defendant 'went back to the police station' is not analogous to establishing that the [d]efendant was arrested for DWI."

The judge also analyzed defendant's motion to withdraw her guilty plea under the factors set forth in State v. Slater, 198 N.J. 145 (2009). The judge determined that defendant's assertion of a claim of innocence was established because there was an insufficient factual basis for her plea. The judge also determined that defendant had presented fair and just reasons for withdrawal because the "words 'probable cause' was never mentioned during the plea allocution."

The judge acknowledged that defendant had a heavy burden in seeking to withdraw her guilty plea because it was part of a plea bargain. Nevertheless, the

judge reasoned that factor should not be given great weight in the balancing process. Finally, under the fourth <u>Slater</u> factor, the judge determined that the withdrawal of defendant's guilty plea would not result in unfair prejudice to the State, but the judge did not explain how or why there was no prejudice to the State.

Based on the court's reasoning, the court entered an order granting defendant's motion to withdraw her guilty plea to the refusal charge. On the State's motion, we granted it leave to appeal the interlocutory order.

## II.

The State argues that there was a sufficient factual basis for defendant's guilty plea to the refusal charge. The State also contends that defendant did not satisfy the requirements for withdrawing her guilty plea under <u>State v. Slater</u>. In opposition, defendant asserts that she did not provide a factual basis for her guilty plea to refusal. Specifically, she contends that she did not admit that there was probable cause to believe that she had been driving while under the influence and she did not expressly admit that she had been arrested for driving while under the influence.

Generally, appellate courts review a trial court's decision to grant or deny a motion to withdraw a guilty plea under an abuse of discretion standard. <u>State</u>

A-1450-25

v. Lipa, 219 N.J. 323, 332 (2014).  Where, however, the issue is solely whether there is an adequate basis to support the plea, we conduct a de novo review because "[a]n appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense."  State v. Tate, 220 N.J. 393, 404 (2015).

In assessing the adequacy of a guilty plea, a court must determine that the plea "(1) has a sufficient factual basis, (2) is offered voluntarily, and (3) is given with a sufficient understanding of the nature of the charge and the consequences flowing from the plea."  State ex rel. T.M., 166 N.J. 319, 325-26 (2001). Accordingly, Rule 3:9-2 states, in relevant part:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, [] and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

The New Jersey Supreme Court has explained:

> The specificity and rigor embodied in Rule 3:9-2 manifest a systematic awareness that a defendant waives significant constitutional rights when pleading guilty, which places an affirmative obligation on a court to reject a plea of guilty when the court is not

11

independently satisfied that the Rule's prerequisites are met.

[T.M., 166 N.J. at 326 (citing State v. Smullen, 118 N.J. 408, 415 (1990)).]

The Court has also explained:

We have adopted the shorthand expression that the trial court 'must be "satisfied from the lips of the defendant that he [or she] committed the acts which constitute the crime"' . . . [t]hat does not mean that a court must follow a prescribed or artificial ritual. To the contrary, because different criminal charges and different defendants require courts to act flexibly to achieve constitutional ends, a factual basis, established either through inquiry of others, which a defendant acknowledges, or through direct admission by the defendant, should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy.

[Id. at 327 (quoting State v. Barboza, 115 N.J. 415, 422 (1989)).]

See also State v. Gregory, 220 N.J. 413, 420-21 (explaining "[s]imply put, a defendant must acknowledge facts that constitute the essential elements of the crime").

There are four elements to establish the charge of refusal to submit to a breath test under N.J.S.A. 39:4-50.4a. State v. Marquez, 202 N.J. 485, 503 (2010). Those elements are:

(1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs;

(2) defendant was arrested for driving while intoxicated;

(3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and

(4) defendant thereafter refused to submit to the test.

[Ibid.]

Defendant and the motion judge focused on the first and second elements. Specifically, the judge reasoned defendant's admission that an officer had "some suspicion" to arrest her did not establish that the officers had probable cause to believe she had been driving while under the influence. Similarly, the motion judge determined defendant's acknowledgment that she "went back to the police department" did not establish that she had been arrested for driving while under the influence.

We reject the motion judge's reasoning because it is inconsistent with the entire record. Reading defendant's admissions during her plea in context establishes that she knew and acknowledged each of the elements of a refusal conviction. A defendant does not have to expressly admit probable cause,

13

because probable cause is a determination made by the court. When defendant pled guilty to the refusal charge, the record before the court clearly established that there was probable cause for defendant's arrest on suspicion of driving while under the influence. There was no dispute that defendant had been arrested. There was also no dispute that defendant had been charged with driving while under the influence. At no point did defendant or her plea counsel question whether there was probable cause for her arrest. Thus, when she admitted that there was "some suspicion" to arrest her, she sufficiently admitted she had been arrested with probable cause.

There was also no issue with the fact that defendant had been arrested for driving while under the influence. Defendant acknowledged that she had been read the standard Statement. That Statement expressly told defendant that she had been "arrested for driving while intoxicated." Consequently, when defendant during her plea colloquy acknowledged under oath that she had "went back to the police department" she sufficiently acknowledged that she had been arrested for driving while under the influence.

Importantly, in pleading guilty, defendant candidly admitted that she was guilty of refusal. She had been previously convicted of refusal to provide a breath sample. Accordingly, the record establishes that she knowingly,

14

voluntarily, and intelligently pled guilty to the refusal charge. Indeed, that knowing, voluntary, and intelligent plea is succinctly summarized in the following exchange:

> Q    Specifically, you[] refused to submit to a chemical test.
>
> A    I understand.
>
> Q    And you're pleading guilty to that motor vehicle ticket [of refusal] because you are guilty.
>
> A    Yes, I am.

In short, form does not trump the substance of defendant's knowing and voluntary plea. See Barboza, 115 N.J. at 421 (explaining the factual basis requirement "serves a variety of purposes," including preventing defendant from entering an unknowing plea and providing a record for appellate review of the plea conditions); see also State v. Taccetta, 200 N.J. 183, 198 (2009) (noting this requirement serves to "ensure[] that innocent people are not punished for crimes they did not commit").

We also reject the motion judge's alternative ground for vacating the plea under the Slater factors. Following sentencing, a defendant seeking to withdraw a guilty plea must show that the withdrawal will "correct a manifest injustice." R. 3:21-1. Under that standard, "the burden rests on defendant . . . to present

some plausible basis for [her] request, and [] good faith in asserting a defense on the merits." Smullen, 118 N.J. at 416 (quoting State v. Huntley, 129 N.J. Super. 13, 17 (App. Div. 1974)). In deciding whether to permit the withdrawal of a guilty plea after sentencing, the court must consider the four factors set forth in Slater:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal [will] result in an unfair prejudice to the State or unfair advantage to the accused.
>
> [Slater, 198 N.J. at 157-58.]

In this matter, the motion judge did not correctly assess the Slater factors. Instead, the judge used her reasonings concerning the inadequate plea to try to satisfy the Slater factors. The record does not contain any evidence that defendant has a colorable claim of innocence. Indeed, defendant does not claim that she is innocent; rather she asserts the State did not establish her guilt. Nor has defendant established the nature and strength of her reasons for withdrawing. There clearly was a plea agreement and defendant clearly understood the agreement. Finally, it would be prejudicial to the State if defendant was now allowed to withdraw her guilty plea.

16

Defendant candidly acknowledges the real reason she is seeking to withdraw her guilty plea to the refusal charge. After her plea and sentence, she was indicted for driving while her license was suspended. Defendant wants to avoid the mandatory prison term if she is convicted of that offense because she has at least two prior convictions for refusing to submit to a breath test.

While we understand defendant's motive, it is inconsistent with the public policy of New Jersey. In adopting N.J.S.A. 2C:40-26, the Legislature required a mandatory period of incarceration as a deterrent to people who continue to drive when their license had been suspended two or more times for driving while intoxicated or for refusing to submit to a breath test. See State v. Harris, 439 N.J. Super. 150, 160 (App. Div. 2015); State v. Perry, 439 N.J. Super. 514, 522-23 (App Div. 2015). It would, therefore, be inconsistent with New Jersey's public policy to protect the public from the hazards of people driving while under the influence, to allow defendant to withdraw her guilty plea to the refusal conviction because she subsequently drove while her license was suspended for that very conviction and a prior conviction.

In summary, defendant's plea was adequate, and she failed to establish grounds for withdrawing her plea under the Slater factors. Accordingly, we reverse and vacate the October 23, 2025 order and reinstate defendant's refusal

17

conviction. On remand, the trial court is to enter an order denying defendant's motion to withdraw her guilty plea to the refusal conviction.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1450-25