**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2837-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KAHSEEM ALLAH-SHABAZZ,
a/k/a KAHSEEM PATTERSON,
KAHSEEM ALLAH, DAVID
BLACK, TRYONE BLOCK,
JASON ZIMMONS and
KAHSEEM S. POWER,

    Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided March 2, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-07-0635.

Joseph E. Krakora, Public Defender, attorney for appellant (Kimmo Z. H. Abbasi, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Kerry Salkin, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kahseem Allah-Shabazz appeals from the denial of his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

We discern the following facts from the record. On November 6, 2015, defendant committed three armed robberies in Paterson by pointing a handgun at the victims and stealing their cell phones. A Passaic County grand jury returned an indictment that charged defendant with three counts of first-degree robbery, N.J.S.A. 2C:15-1, and fourteen related weapons and drug offenses.[1]

On April 13, 2017, defendant pled guilty to three counts of first-degree robbery in exchange for a recommended sentence of three concurrent ten-year terms, subject to the parole ineligibility and mandatory parole supervision imposed by the No Early Release Act, N.J.S.A. 2C:43-7.2, dismissal of the remaining counts, and "equitable jail credit" from February 5, 2016 to April 13,

---

[1] The additional fourteen counts included: first-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(j); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons N.J.S.A. 2C:39-7(b)(1).

2017. The prison terms would also run concurrent to defendant's federal sentence.

During the thorough plea hearing, defendant acknowledged that he understood he would be pleading guilty to three armed robberies and the recommended sentence. Defendant indicated that he wanted to go forward with the guilty pleas and had no questions about the plea agreement.

Defendant confirmed that he filled out the plea form with the assistance of his attorney, his answers on the plea form were truthful, and he initialed and signed the form of his own free will. He also acknowledged he understood his sentencing exposure, including the period of parole ineligibility and parole supervision under NERA.[2] Defendant further acknowledged that by pleading guilty he was giving up his right to trial by jury, the presumption of innocence, the right to confront the State's witnesses and to present his own witnesses, the right to remain silent, and the right to file pretrial motions.

Defendant also confirmed that he was sure he wanted to plead guilty, that no one forced or threatened him to plead guilty, and that no one made any promises to him other than the terms of the plea agreement. He further

---

[2] Although the judge mistakenly stated the maximum exposure on each armed robbery count was a ten-year term, the plea form correctly indicated that the exposure was a twenty-year term on each, for a total of sixty years.

A-2837-18T4

confirmed that he was satisfied with his attorney's advice, he had enough time to discuss the case with his attorney, and his attorney has answered all of his questions to his satisfaction.

Defendant acknowledged he was pleading guilty of his own free will and because he was, in fact, guilty. He then acknowledged that all of his answers were truthful, that he had no questions, and that there was nothing about the proceeding that he did not understand.

Defendant provided a factual basis for the plea, acknowledging that on November 6, 2015, he committed the armed robberies of three separate victims with a loaded handgun and stole their cell phones. The judge accepted the guilty pleas, finding they were supported by an adequate factual basis and were entered "knowingly, intelligently and voluntarily and not as a result of any threats or promises or inducements not disclosed on the record."

On June 5, 2017, defendant was sentenced in accordance with the plea agreement to three concurrent ten-year NERA terms. The judge noted that defendant's criminal record stretched back to 1995, he had been previously convicted of attempted murder and several drug offenses, and he had served several prison terms. He found aggravating factors three (risk of re-offending), six (prior criminal record), and nine (need for deterrence). See N.J.S.A. 2C:44-

1(a)(3), (6), (9). The judge also found that the aggravating factors outweighed the nonexistent mitigating factors. Defendant did not file a direct appeal.

On October 11, 2017, defendant filed a pro se PCR petition alleging ineffective assistance of counsel. The application included a post-sentence motion to withdraw his guilty plea pursuant to Rule 3:21-1. Counsel was appointed to represent him and filed a supplemental brief.

Judge Scott J. Bennion determined that an evidentiary hearing was warranted. During the hearing, trial counsel James V. Pomaco and defendant testified.

Pomaco testified that he met with defendant before each court hearing. He indicated that he had received all of the discovery in the case before defendant pled guilty, including the report from the Officer Luis Pagan of the Passaic County Sheriff's Department that discussed the perpetrator wearing a mask. That report was in defendant's possession from the discovery in his federal case. It was also included in the discovery from this case. Pomaco reviewed the report himself and then with defendant. They discussed the report and issues related to it. Both were familiar with the report. The report was taken into consideration in terms of whether defendant should accept the plea offer.

Pomaco reviewed the discovery and the entire file with defendant at the jail, including all the witnesses' statements. When asked whether defendant requested filing a motion for a <u>Wade</u>[3] hearing, Pomaco testified:

> I don't believe we contemplated filing a <u>Wade</u> hearing. I didn't find it necessary.
>
> Also, with regards to resolving the case, he was looking at a substantial sentence. And we were able to negotiate – a very fair and reasonable offer.
>
> So, we decided it would [be] the best option for him to take the – the deal that was on the table.

Pomaco did not recall defendant continuously asking for a <u>Wade</u> hearing.

On redirect, Pomaco confirmed that he had lengthy discussions with the prosecutor about how to resolve the case. Defendant participated in one of those discussions, which included an explanation of the proofs against him. The prosecutor explained to defendant that he was eligible for a life sentence because of his significant criminal history and that if he filed a <u>Wade</u> motion, the prosecutor's office would revoke the plea offer and proceed to trial. Pomaco also discussed this risk with defendant during other meetings with him.

Pomaco reiterated that he expressed it would be in defendant's best interest to not file the <u>Wade</u> motion in order to take advantage of a very

---

[3] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

reasonable plea offer and avoid the extremely strong evidence against him in a trial that would expose him to a very lengthy sentence. Pomace testified that "[i]t was . . . a very reasonable offer and [defendant] knew the risk and we took the deal."

Defendant testified that he initially received the discovery from his federal public defender. Defendant shared that discovery with Pomaco at his arraignment and claimed he told him that he wanted a <u>Wade</u> hearing to challenge the identifications by the witnesses because they said the robber had a mask. He claimed he received no discovery from Pomaco, not even the witnesses' statements. At the next court appearance, defendant gave Pomaco a handwritten letter stating he wanted a <u>Wade</u> hearing to suppress evidence.

Defendant claimed that if he had seen the witnesses' statements, he would never have pled guilty. Defendant admitted the State could have convicted him of the drug offenses because he was selling drugs and the drugs were his. He confirmed discussing the plea offer with Pomaco, who told him to take the deal or go to trial. Defendant claimed Pomaco never discussed the motions or strategy with him and "never came to see [him] anywhere" other than the courtroom.

On cross-examination, defendant testified that Pomaco told him at the arraignment that he did not have the three witness statements. Pomaco did not tell him to take a plea at the arraignment. Defendant claimed he first heard the plea offer the day of the plea hearing but admitted he met with Pomaco on every court date. Defendant could not recall the dates of the seven court appearances that took place after the arraignment. On redirect, defendant confirmed that he spoke to Pomaco about the case every time he went to court.

In his written decision, Judge Bennion found Pomaco's testimony to be credible, noting "the forthright manner in which he responded to the questions of both the court and the attorneys, as well as the objective reasonableness of his testimony." Implicit in that finding was that defendant's version was not believable.

After recounting defendant's testimony during the plea hearing and the evidence adduced at the evidentiary hearing, the judge made the following findings:

> [Defendant] is claiming that he only learned after entering his guilty plea that the eyewitnesses gave statements claiming that the actors were wearing ski masks during the robberies, and that defense counsel should have file[d] a Wade motion in this matter, which [defendant] also claims he had been telling counsel to file during the time that led up to the plea being entered.

8

Having considered all the evidence presented, as well on the testimony of [defendant] and Mr. Pomaco, this court finds that Mr. Pomaco met with [defendant] prior to the plea being entered, that at the time Mr. Pomaco had full discovery, including the witness statements and the Passaic County Sheriff's Department report, which described the actors as wearing masks, and ultimately, both [defendant] and Mr. Pomaco decided that it was in the [defendant's] best interest to accept what Mr. Pomaco described as a fair and reasonable plea offer.

This court further notes that even without the ability to see the [defendant's] face due to his wearing a ski mask, [defendant] matched several other aspects of the description given by the three (3) victims such as being a black male, short (5'8"), stocky (250 or 270 pounds), wearing all black clothing, and possessing a semi-automatic handgun (found to have been discarded by [defendant] during a foot chase). Also, an unoccupied vehicle registered to [defendant], who lived in Lodi, Bergen County, was found with its engine running in the vicinity of where [defendant] was apprehended in Paterson.

This court finds that Mr. Pomaco's performance in representing [defendant] was within the scope of competence demanded of an attorney in criminal cases, that he did not perform in an erroneous manner in any fashion, that [defendant] consulted with him in considering all the proofs and the potential downsides of potentially multiple convictions, and that they both wisely chose to accept the State's plea offer.

Based on these findings, the judge rejected defendant's arguments and denied the petition. This appeal followed.

On appeal, defendant argues:

> [POINT ONE]
>
> THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF.
>
> [POINT TWO]
>
> PETITIONER'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY GIVEN.

When a guilty plea is involved, a defendant must satisfy two criteria to set aside the plea based on ineffective assistance of counsel. State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009). The defendant must demonstrate that "(i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" Ibid. (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694 (1984). The defendant must also show that doing so "would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010). Accord Nuñez-Valdéz, 200 N.J. at 139.

A-2837-18T4

When a claim of ineffective assistance of counsel is based on the failure to file a <u>Wade</u> motion, the defendant must prove that his claim that the out-of-court identifications made by the three victims are inadmissible is meritorious. <u>See</u> <u>State v. Fisher</u>, 156 N.J. 494, 501 (1998) ("when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the <u>Strickland</u> test but also must prove that his Fourth Amendment claim is meritorious") (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986)); <u>State v. Roper</u>, 378 N.J. Super. 236 (App. Div. 2005) (inadequacy not shown where counsel failed to file a meritless suppression motion).

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." <u>State v. Nash</u>, 212 N.J. 518, 540 (2013); <u>see also</u> <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 373 (App. Div. 2014) ("If a court has conducted an evidentiary hearing on a petition for PCR, we necessarily defer to the trial court's factual findings."). Where an evidentiary hearing has been held, we do not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." <u>State v. Pierre</u>, 223 N.J. 560, 576 (2015) (quoting <u>Nash</u>, 212 N.J. at 540). We review any legal conclusions de novo. <u>Nash</u>, 212 N.J. at 540-41 (citing <u>State v. Harris</u>, 181 N.J. 391, 415-16 (2004)).

Applying this standard of review, we are not persuaded by defendant's arguments. We are satisfied that Judge Bennion's findings of fact, credibility determinations, and conclusions are well supported by the credible evidence in the record. We affirm the denial of defendant's petition substantially for the reasons expressed in Judge Bennion's well-reasoned written decision. We add the following comments.

Defendant was facing three first-degree robbery charges, one first-degree and two second-degree weapons charges, and numerous drug charges. He was exposed to potential consecutive sentences and possible life imprisonment. Trial counsel was able to negotiate a very favorable plea offer of an aggregate ten-year NERA term, running concurrently to the sentences imposed on defendant's other State and federal charges. Under the offer, fourteen counts were to be dismissed, and defendant would receive the minimum ten-year term for first-degree offenses. Defendant received the recommended sentence. On the other hand, had defendant filed a Wade motion, the prosecutor would have revoked the plea offer.

Defendant has not shown that trial counsel's assistance fell below the range of competence demanded of attorneys in criminal cases. He has not demonstrated that a Wade hearing would have been successful or that he was

coerced or improperly pressured to plead guilty so as to render his plea involuntary. Nor has he demonstrated there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial and that it would have been rational to do so under the circumstances. On the contrary, defendant's testimony during the plea hearing belies his claims. Mere dissatisfaction with a plea bargain, coupled with attacks on counsel's strategy, does not present a cognizable claim for PCR. See Nash, 212 N.J. at 542 ("Mere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction."); State v. Fritz, 105 N.J. 42, 54 (1987) ("complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy"). Accordingly, defendant's petition was properly denied.

Defendant's motion to withdraw his guilty plea also lacked merit. A post-sentencing motion to withdraw a guilty plea may only be granted "to correct a manifest injustice." R. 3:21-1; accord State v. Fischer, 38 N.J. 40, 48 (1962); State v. Deutsch, 34 N.J. 190, 198 (1961). The burden is on the defendant to show why his plea should be withdrawn. State v. Huntley, 129 N.J. Super. 13, 17 (App. Div. 1974).

A-2837-18T4

In State v. Slater, the Court set forth four factors to consider in evaluating a motion to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. 145, 157-58 (2009). Based on the trial court's fully supported findings, defendant did not meet his burden.

First, defendant did not demonstrate a colorable claim of innocence. His basis for relief is that witnesses told law enforcement that the robber was wearing a mask and that he could prove he was not wearing a mask. Even so, defendant matched several aspects of the descriptions provided by the victims, including his height and build; in addition, defendant took flight, he possessed a semi-automatic handgun, and his car was found nearby the robberies with its engine running. Moreover, "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." Id. at 158. Defendant's claim that he was not wearing a mask is just that. Here, the "evidence that was available to the prosecutor and to the defendant through our discovery practices at the time the defendant entered the plea of guilt . . . serve[d] to rebut the assertion of

innocence[.]"  Id. at 158-59 (quoting State v. Smullen, 118 N.J. 408, 418 (1990)).

Second, defendant cannot show fair and just reasons for withdrawal. Defendant's claim that he was pressured and coerced by trial counsel to plead guilty is belied by his directly contrary testimony during the plea hearing.  His claim that trial counsel failed to file a Wade motion is refuted by Pomaco's credible testimony that a strategic decision was made to not file the motion to avoid revocation of the favorable plea offer.

Third, the presence of a very favorable negotiated plea agreement weighs in favor of the State.  As we have noted, defendant was facing a barrage of serious charges and the potential for consecutive sentences and life imprisonment.  His attorney negotiated a very favorable recommended sentence.

Fourth, "[t]he State is not required to show prejudice if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." Id. at 162 (citing United States v. Jones, 336 F.3d 245, 255 (3d Cir. 2002)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2837-18T4