**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3292-22

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JUAN C. HERNANDEZ-PERALTA,

    Defendant-Respondent.

_____

Argued January 17, 2024 – Decided March 8, 2024

Before Judges Haas and Natali.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 19-06-0946 and 19-09-1370.

Shiraz I. Deen, Assistant Prosecutor, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Shiraz I. Deen on the briefs).

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora,

Public Defender, attorney; Stefan Van Jura, of counsel and on the brief).

PER CURIAM

The State challenges a Law Division order granting defendant Juan C. Hernandez-Peralta's petition for post-conviction relief (PCR) after an evidentiary hearing, and vacating defendant's convictions and sentences. The court determined defendant's sentencing counsel was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 687 (1984)[1] for failing to advise defendant of the adverse immigration consequences of his guilty plea when she was presented with discrepancies in the pre-sentence report (PSR) indicating defendant may not be a United States citizen. Because we conclude the court did not properly address Strickland's prejudice prong with respect to any deficiency in sentencing counsel's representation, we vacate the court's order and remand with directions for the court to consider that prong by determining whether defendant would have been entitled to withdraw his guilty plea under the factors set forth in State v. Slater, 198 N.J. 145, 150 (2009).

---

[1] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, 466 U.S. at 687, by demonstrating that: 1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense. The Strickland test has been adopted for application under our State constitution. See State v. Fritz, 105 N.J. 42, 58 (1987).

A-3292-22

I.

We begin by reviewing the pertinent facts in the record. The specific details of the crimes for which defendant was charged are not particularly relevant. It is sufficient to say the charges against defendant arise from two Ocean County burglaries in early 2019. On June 19, 2019, he was indicted by a grand jury on charges of third-degree burglary, N.J.S.A. 2C:18-2(a)(1), and third-degree theft, N.J.S.A. 2C:20-3(a) (the first indictment). Subsequently, defendant was indicted on September 4, 2019, on two counts of third-degree burglary, N.J.S.A. 2C:18-2(a)(1); two counts of fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); second-degree robbery, N.J.S.A. 2C:15-1; third-degree theft, N.J.S.A. 2C:20-3(a); third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (the second indictment).

The parties reached a plea agreement in which defendant agreed to plead guilty to third-degree burglary with respect to the first indictment, and second-degree robbery and two counts of third-degree burglary with respect to the second indictment. In exchange, the State agreed to recommend a sentence of

five years of Drug Court[2] probation, with an alternative sentence of five years of incarceration on each indictment, to run concurrently, with the sentence on the second indictment subject to the No Early Release Act (NERA).[3] Defendant pled guilty, consistent with the agreement, on November 22, 2019.

Defendant completed a standard plea form in which question seventeen asked if he was a citizen of the United States. The question also includes several subsections to be completed if the defendant is not a United States citizen, including inquiries whether defendant understands his guilty plea could result in removal or inability to re-enter the United States. Defendant's plea counsel circled "yes" on his behalf in response to question seventeen, indicating defendant was a citizen, and crossed out the subsections.

At the PCR hearing, plea counsel testified he reviewed the plea form, including question seventeen, with defendant. Plea counsel recalled defendant telling him he was a United States citizen who was born in New York. Nevertheless, plea counsel explained it was his "pattern and practice" with all

---

[2] Drug Court is now known as Recovery Court. We refer to it as Drug Court as that was the term in use at the time defendant was sentenced.

[3] N.J.S.A. 2C:43-7.2 requires a mandatory minimum parole ineligibility period of 85% of the sentence for certain enumerated offenses, including robbery, N.J.S.A. 2C:15-1.

A-3292-22

clients to review the additional subsections of question seventeen, and if not applicable, cross out each subsection on the form as he went. He also testified he "didn't feel there was any duty to affirmatively try to verify the accuracy" of defendant's unambiguous statements concerning his citizenship and place of birth.

At the plea hearing, the court also inquired directly of defendant whether he was a United States citizen and defendant confirmed that he was. The court then asked defendant where he was born, and he responded, "I was born in New York."

A PSR was completed prior to defendant's sentencing hearing, which stated defendant was born not in New York, but in Mexico. The PSR also left blank the questions inquiring about defendant's social security number, driver's license, telephone number, alien status, citizenship, and nationality. The PSR also stated defendant's mother did not live in the United States, and defendant had no contact with his father.

On December 10, 2019, defendant appeared before the court for sentencing, represented by a different attorney (sentencing counsel). Sentencing counsel testified at the PCR hearing she reviewed the PSR with defendant for about ten minutes prior to the sentencing hearing. She stated she asked

defendant if he was born in Mexico, and he confirmed he was. She also stated she asked defendant if he was a United States citizen and he again confirmed that he was. She added when she asked defendant for his social security number, he said he did not recall it.

Sentencing counsel testified it was not unusual for clients to be unaware of their social security numbers, or for the PSR to be incomplete. Additionally, she stated she had often represented clients who were United States citizens but who were born in other countries. Sentencing counsel explained she was not aware defendant had stated he was born in New York at the plea hearing, and if she had known, "that would have rung bells for [her] because that would've been a change, a difference." Absent that information, she stated she undertook no further investigation of defendant's citizenship.

At the sentencing hearing, sentencing counsel advised the court that she and defendant "received and reviewed" the PSR and it was "accurate for the purposes of sentencing." The court sentenced defendant consistent with the plea agreement to five years of Drug Court probation, with an alternative five-year custodial term on each indictment, to run concurrently and subject to NERA on the second indictment only.

Defendant did not comply with the conditions of his probation and ultimately pled guilty to probation violations in February and August 2020. At the plea hearings in both February and August 2020, the court again inquired of defendant whether he was a United States citizen. Defendant confirmed he was. The court also asked defendant where he was born, to which he responded he was born in Mexico. In August 2020, the court terminated defendant from Drug Court and imposed the five-year custodial term originally contemplated.

Although he did not file a direct appeal, defendant filed the instant timely pro se petition for PCR in which he asserted he was "not properly informed of the immigration consequences of [his] plea agreement." After appointing PCR counsel, the court conducted an evidentiary hearing over two days at which defendant, plea counsel, and sentencing counsel testified.

Defendant testified he was born in Mexico and came to the United States when he was "a year and a half" old. He explained he "lived most of [his] life in New York" and moved to New Jersey in 2018 or 2019. Defendant stated he has a "green card"[4] and social security number and "thought that [he] was a

_____

[4]    According to the United States Citizenship and Immigration Services (USCIS), a green card, or permanent resident card, proves that its holder is authorized to live and work permanently in the United States. USCIS, Green Card, https://www.uscis.gov/green-card (last visited Feb. 23, 2024).

U[nited] S[tates] citizen already" because "that's what [he] heard" from his family. He found out he was not a citizen "when [he] received the papers saying that [he was] go[ing to] be deported" in 2022.

Defendant further testified he discussed his case with plea counsel twice before entering the plea. He stated during those discussions, he informed plea counsel he "didn't wan[t to] go to prison" and would like to apply for Drug Court. Defendant noted he did not discuss his nationality, birthplace, or citizenship with plea counsel, but admitted he directed counsel to circle yes on the plea form to indicate he was a United States citizen.

Defendant also testified he informed the investigator preparing the PSR that he was born in Mexico and had his "green card," but explained that he did not understand his immigration status in 2019 when he entered his plea. He denied having "any conversations with [sentencing counsel] about [his] immigration status" or about his birthplace as shown in the PSR. Defendant confirmed he did not inform either plea counsel or sentencing counsel that he "was a green card holder."

Additionally, when asked why he stated he was born in New York when he knew he was born in Mexico, defendant stated he had "no idea," noting he "was raised in New York [his] whole life," and "kind of forgot and just decided

8

to say that." Further, when asked to explain the discrepancy between his statements to the court at the plea hearing and to the PSR investigator, defendant again testified he had "no idea" what happened to make him change his answer, and he was "paranoid around that time" and "wasn't thinking clearly." He also confirmed he was aware at the time he told the court he was born in New York that statement was not true.

Following defendant's testimony, the court advised him that the indictments would not be dismissed if he succeeded on PCR but rather defendant would "just go back to square one, go back to being a defendant who's charged." Further, the court noted defendant could "end up getting more time than [he] previously w[as] sentenced to and still get deported." Defendant confirmed he understood and wished to proceed.

Plea counsel testified, as noted, regarding the circumstances surrounding the entry of defendant's plea. In response to the court's question how he would proceed if he discovered at sentencing a defendant "had made an affirmatively false statement [that] was significant as to his immigration consequences," plea counsel stated he first would bring the matter to the Public Defender's Office's immigration specialist for advice specific to the case. Next, he would likely file

a motion to withdraw defendant's guilty plea, and if granted, he would determine how to proceed with defendant and immigration counsel.

In addition to the previously mentioned testimony regarding the sentencing hearing, sentencing counsel testified in her twenty-five years in practice, she "had to stop and say 'let me just take some time out here and check on the status of this person'" at sentencing "three or four" times. She explained it was "not a normal practice" to "rehash[] and re-go[] over all of the immigration" questions and issues at sentencing because typically those matters were addressed during negotiations and while reviewing the plea form.

The court granted defendant's PCR petition in a written order dated May 23, 2023, accompanied by an oral ruling on the same date. It found plea counsel testified credibly that he "meticulously went through the plea agreement with defendant," including question seventeen and its subsections involving citizenship, despite defendant's representation that he was a citizen. The court also determined sentencing counsel testified credibly that she reviewed the PSR with defendant, including that during that review, defendant "continued to claim to be a U[nited] S[tates] citizen."

Relying upon Padilla v. Kentucky, 559 U.S. 356, 374 (2010) and State v. Gaitan, 209 N.J. 339, 380 (2012), the court noted "[a] defendant can show

ineffective assistance of counsel by proving that his or her guilty plea resulted from inadequate information from counsel concerning deportation consequences of a guilty plea." Specifically, it explained "where the terms of the relevant immigration statute are succinct, clear, and explicit in defining a removal consequence, then the attorney is obligated to be equally clear" under Gaitan, 209 N.J. at 380, and State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016), but where the law is "not succinct and straightforward," counsel need only advise their client "that a pending criminal charge may carry a risk of adverse immigration consequences" under Padilla, 559 U.S. at 369. Here, relying upon Gaitan, 209 N.J. at 359, the court concluded the second-degree robbery charge to which defendant pled guilty is an aggravated felony which would clearly subject a non-citizen to mandatory removal.

Next, the court noted under State v. DiFrisco, 174 N.J. 195, 228 (2002), "[c]ounsel cannot be faulted for failing to expend time or resources analyzing events about which he or she was never alerted." Here, it found defendant failed to establish that plea counsel "had any information that the defendant was not a United States citizen," because defendant "affirmatively said he was a United States citizen" and was born in the United States, both to plea counsel and the court. The court concluded there were no facts calling those statements into

11

question before plea counsel, nor was there anything "to indicate that [plea counsel] was ever given any notice that he had to advise the defendant." Thus, while the court noted it was "unclear" whether plea counsel's advisement on question seventeen of the plea form was "described as mandatory deportability or just the permissive language . . . that a defendant may be subject to deportation," it concluded plea counsel could not have fully advised defendant that he was subject to mandatory deportation "because he had zero information defendant was not a U[nited] S[tates] citizen."

In contrast, the court found "the information available to [sentencing counsel] established that there were signs which indicated defendant may be subject to mandatory deportation" and required further investigation. Specifically, it highlighted the PSR which stated defendant was born in Mexico and "at best . . . shows that [defendant's] citizenship is in doubt." Under the "totality of the circumstances," including that defendant could not remember his social security number, the lack of driver's license or telephone number listed on the PSR, that defendant's mother was not in the country and that he did not have contact with his father, the court found "there's a series of deficient information which should have raised red flags to the attorney to conduct an investigation."

12

The court further explained "there was sufficient information in possession of [sentencing counsel] and in her knowledge . . . to trigger the duty to advise the defendant of the mandatory deportability of the conviction under so-called prevailing professional norms as those are discussed in . . . Gaitan and Padilla." Further, it found "sentencing counsel had an obligation to place it on the record that there w[ere] discrepancies with defendant's alleged citizenship, that there was affirmative information in the [PSR] to indicate he was not a U[nited] S[tates] citizen, and to then take whatever action was appropriate" including inquiring of defendant of his citizenship status under oath or "ask[ing] for a postponement of the sentencing to investigate with some other family members or . . . agencies." It noted "the standard for a withdrawal of a guilty plea is much more liberal pre-sentencing than it is post-sentencing," and the citizenship issue could have been raised in such a motion.

The court rejected the State's claim of invited error, finding it "not particularly appropriate" in this circumstance despite sharing "the State's concern that a grant of relief in favor of the defendant would essentially [re]ward him for being untruthful to his plea counsel . . . and to the plea judge." In doing so it addressed several unpublished cases relied upon by the State and found each factually distinguishable.

A-3292-22

Although concluding plea counsel could not have advised defendant he was subject to mandatory deportation, the court determined sentencing counsel could and should have so advised defendant. It therefore found defendant had met his burden under Strickland and ordered defendant's convictions and sentences with respect to both indictments vacated and the cases restored to the trial calendar. This appeal followed.

The court thereafter submitted a written amplification pursuant to Rule 2:5-1(d), providing additional support for its ruling. It noted defendant was obligated to establish "prior counsel's performance was deficient as measured by an objective standard of reasonableness and that these deficiencies materially contributed to the outcome in the matter" under Strickland, 466 U.S. at 687. Specifically, the court explained under State v. Buonadonna, 122 N.J. 22, 41 (1991), "defendant must demonstrate that counsel's representation was truly deficient, with such grievous errors that 'counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.'" Even after making this showing, it continued, defendant must show "a reasonable probability that but for counsel's unprofessional errors the result of a proceeding would have been different."

14

In the context of a guilty plea, the court wrote, relying upon Lafler v. Cooper, 566 U.S. 156, 163 (2012), defendant "must demonstrate with 'reasonable probability' that the result would have been different had he received proper advice from his attorney." Further, it noted under State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011), "defendant must also 'convince the court that a decision to reject the plea bargain' and 'insist on going to trial' 'would have been rational under the circumstances.'"

Additionally, the court explained a defendant can demonstrate ineffective assistance of counsel "by proving that his [or her] guilty plea resulted from 'inaccurate information from counsel concerning the deportation consequences of his [or her] plea'" under State v. Brewster, 429 N.J. Super. 387, 392 (App. Div. 2013) (alterations in original). It specified, under State v. Barros, 425 N.J. Super. 329, 331 (App. Div. 2012), "counsel's 'failure to advise a noncitizen client that a guilty plea will lead to mandatory deportation deprives the client of the effective assistance of counsel guaranteed by the Sixth Amendment.'" As the offenses to which defendant pled guilty "likely qualified as aggravated felonies making deportation virtually certain" under Gaitan, 200 N.J. at 359, the court found the obligation to advise defendant of that consequence was triggered.

15

Because this issue "turns on plea counsel's failure to investigate defendant's status as a U[nited] S[tates] citizen," the court further explained "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" under State v. Savage, 120 N.J. 594, 618 (1990). Additionally, it noted the extent of that investigation "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments" under State v. Perry, 124 N.J. 128, 154 (1991).

The court reiterated its finding plea counsel was "credible and compelling" and "had no information or indication to dispute defendant's claim to have been born in New York and to be a U[nited] S[tates] citizen." It also confirmed sentencing counsel was credible, but the inconsistency between defendant's citizenship claim on the plea form and the PSR "should have put sentencing counsel on notice as to defendant's citizenship which would require further investigation." The court found "a competent defense attorney in the shoes of sentencing counsel would have been expected, under prevailing professional norms, to address the discrepancy between the plea form and the PSR on the record with defendant in the presence of the sentencing judge" and to advise defendant "if he was not a U[nited] S[tates] citizen, he faced

16

deportation from the United States, would be barred from re-entering and would not be able to become a naturalized citizen."

The court again rejected the State's invited error claim, finding it "did not bar relief in this instance." Specifically, it found although "defendant was untruthful to [the court] and plea counsel regarding his place of birth and alleged U[nited] S[tates] citizenship . . . defendant's lack of candor did not relieve sentencing counsel of the obligation to investigate the discrepancies between his claim to be a U[nited] S[tates] citizen and the contrary information presented in the PSR."

The court also concluded defendant established he had been prejudiced by the representation. Specifically, it accepted that defendant "was satisfied with Drug Court probation but did not want to be deported" and found "[i]t would have been illogical for him to accept Drug Court probation and expect to complete same if he knew he was going to be deported." Together with defendant's life-long connections to the New York-New Jersey area, the court found "defendant has proven to a reasonable probability that he would have rejected the State's plea offer and not pled guilty had he properly been advised of the adverse immigration consequences."

II.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Nash, 212 N.J. at 541; State v. Preciose, 129 N.J. 451, 459 (1992). As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

The United States Supreme Court held a defendant may meet the first Strickland prong by showing that their attorney made misrepresentations, either

affirmatively or by omission, regarding the potential immigration consequences flowing from a guilty plea. Padilla, 559 U.S. at 369-71. When deportation is a clear consequence of a guilty plea, the defendant's counsel has an affirmative duty to address the subject and give correct advice. Id. at 374; see also State v. Chau, 473 N.J. Super. 430, 444 (App. Div. 2022) (stressing in post-Padilla pleas, plea counsel was obligated to advise the client "regarding the risk of deportation"). When the deportation consequences of a plea are uncertain, counsel need only advise their client that the plea may carry a risk of adverse immigration consequences. Padilla, 559 U.S. at 369.

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, the defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984). Where the PCR involves a plea bargain, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going

19

to trial.'" Gaitan, 209 N.J. at 351 (alteration in original) (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)).

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. As such, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689.

Additionally, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Porter, 216 N.J. 343, 353 (2013) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). "Counsel cannot be faulted for failing to expend time or resources analyzing events about which they were never alerted." DiFrisco, 174 N.J. at 228. Similarly, "counsel cannot be deemed ineffective for failing to raise arguments that are ultimately deemed without merit." State v. Roper, 362 N.J. Super. 248, 252 (App. Div. 2003) (citing State v. Worlock, 117 N.J. 596, 625 (1990)).

With these principles in mind, we turn now to the parties' arguments. The State contends the court erred in granting defendant's PCR petition because it improperly construed the blank sections of defendant's PSR as requiring counsel

to conduct an independent investigation of citizenship despite defendant's "clear and unambiguous assertion" he was a United States citizen. According to the State, this conclusion is unsupported by case law and misapplies Strickland.

The State further contends counsel's reasonable inference "that questions about citizenship status have been fully explored during the plea process provided there is no directly contradictory information in the record" does not constitute an error so grievous "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," under Buonadonna, 122 N.J. at 41. Although "[d]elaying sentencing to investigate all blank boxes in the PSR might have been an ideal practice," the State concludes the failure to do so was not constitutionally ineffective. Additionally, it argues counsel's duties to provide immigration advice arise at the time of the plea under Padilla and Gaitan, not at sentencing.

Further, the State notes a PSR is based primarily on an interview with the defendant, and the blank sections on it could have various explanations, including "a lack of recollection or cooperation from the defendant, negligence on the part of the [investigator], or simply uncertainty about the issue." The State argues the PSR investigator's determination of citizenship should not be given greater significance than defendant's own reported knowledge. It asserts

21

sentencing counsel "performed the exact level of investigation that the presentence investigator would have gone through in order to properly fill [the citizenship] box: she asked [d]efendant if he was a citizen, and he responded, 'yes.'"

In requesting we affirm, defendant argues he believed he was a United States citizen at the time of his plea and sentencing, because he had a "green card" and legitimate social security number, and had spent his whole life in the United States. Defendant asserts he was not "plotting to deceive" but rather "displaying the innocent bumbling of youth," exacerbated by his lack of education and stunted "emotional and intellectual growth" due to "serious drug use beginning at an early age," as shown in the PSR. Defendant also argues, as the court noted, sentencing counsel had an obligation to inquire further upon noticing defendant was born in Mexico, "at which point defendant presumably would have said that he was a citizen because he had a green card and social security number[, which c]ompetent counsel would have recognized . . . do not confer citizenship."

First, we are satisfied the court's finding that defendant did not satisfy the performance prong of Strickland with respect to plea counsel was amply supported by the record. In addition to defendant's unambiguous statements to

22

both plea counsel and the court that he was a United States citizen, born in New York, there was nothing in the record which indicated to plea counsel that defendant was not a United States citizen. As noted, counsel cannot be ineffective for failing to analyze facts to which they were not alerted. See DiFrisco, 174 N.J. at 228.

We agree with the court and defendant, however, that there were sufficient facts in the PSR to put sentencing counsel on notice that defendant may not be a United States citizen. We acknowledge that defendant stated to sentencing counsel that he was a United States citizen, and that a person born in another country may nevertheless be a citizen of the United States. The PSR stated defendant was born in Mexico but did not confirm his citizenship or alien status. Other facts in the PSR such as the lack of driver's license information and defendant's mother's residence outside the United States, while not necessarily proof defendant was not a citizen, provided further cause for suspicion as the court correctly found.

Although we are mindful of our duty "to eliminate the distorting effects of hindsight," Strickland, 466 U.S. at 689, we recognize that had sentencing counsel inquired further of defendant as to how or when he became a citizen, she likely would have discovered that he was, in fact, a green card holder rather

23

than a citizen. At that point, sentencing counsel could have requested an adjournment of the hearing and potentially sought to withdraw defendant's guilty plea.

We are not persuaded by the State's argument that counsel's duty to advise a defendant of the immigration consequences of their guilty plea arises only at the time of the plea. Neither Padilla nor Gaitan specified its holding applied only to plea counsel. Padilla, 559 U.S. at 374 ("we now hold that counsel must inform her client whether his plea carries a risk of deportation"); Gaitan, 209 N.J. at 380 ("counsel's failure to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense will be viewed as deficient performance of counsel"). Further, we noted in State v. L.G.-M., 462 N.J. Super. 357, 366 (App. Div. 2020), "[n]either Padilla nor Gaitan expressly limits its holding to cases in which a defendant enters a guilty plea, and we decline to narrowly construe their application only to those dispositions."

It is undisputed the charges to which defendant pled guilty subjected him to mandatory deportation. See Gaitan, 209 N.J. at 359 (noting "removal of a noncitizen convicted of an aggravated felony is mandatory" under 8 U.S.C. § 1227(a)(2)(A)(iii) and specifying "violent crimes" and "burglary offenses" which "result[] in at least one year of imprisonment" are aggravated felonies for

24                                                                      A-3292-22

immigration purposes). Taken together with the information in the PSR indicating a question as to defendant's citizenship, the record reflects sentencing counsel failed to meet her affirmative duty to advise defendant that deportation was a clear consequence of his guilty plea under Padilla, 559 U.S. at 374.

III.

Our agreement with the court's determination that sentencing counsel was ineffective does not end the analysis as to whether the court properly granted defendant's petition because, as noted, prejudice is not presumed. Fritz, 105 N.J. at 52. On this point, the State argues defendant failed to establish prejudice, noting the court did not consider, under State v. Slater, 198 N.J. at 157-58, that "the evidence in this case was overwhelming and [d]efendant has not set forth any colorable claim of innocence or defense to the charges." Additionally, the State highlights defendant's testimony at the PCR hearing that the most important goal of a plea agreement for him was to avoid incarceration, which it claims the court again "failed to address." In light of these facts, the State contends "it would not have been rational for [defendant] to go to trial and face a very strong possibility of receiving a significant state's prison sentence." Defendant responds he has shown "he insists on going to trial after receiving the proper advice that a conviction for an aggravated felony will result in his

removal from the country," as demonstrated by his choice to proceed with his PCR petition despite the court advising him the original charges would be reinstated and he could face "significant additional prison time" in addition to being deported.

In our view, the court erred by conflating the potential prejudice caused by a deficiency in counsel's performance at the plea stage and that potentially caused by any error committed by sentencing counsel. In light of our conclusion that plea counsel's performance was constitutionally sufficient, as opposed to sentencing counsel's, defendant must demonstrate he was prejudiced specifically by sentencing counsel's deficient performance. Stated differently, as defendant had already pled guilty, he can establish sentencing counsel's failure to further investigate his citizenship prejudiced him only if that investigation would have led to a successful motion to withdraw his guilty plea. See Roper, 362 N.J. Super. at 252 (holding "counsel cannot be deemed ineffective for failing to raise arguments that are ultimately deemed without merit"). Although the facts underlying a petition for PCR and motion to withdraw a guilty plea may overlap, "a court must nonetheless view the applications separately, and must avoid conflating the two." State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014).

Determining whether defendant's application to withdraw his plea would have been successful requires the court to consider the factors outlined in Slater, 198 N.J. at 157-58. The decision to grant or deny a motion to retract a guilty plea is discretionary and is governed by four factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Ibid. Satisfaction of all these factors is not mandatory and a "missing" factor "does not automatically disqualify or dictate relief." Id. at 162. "[T]he burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." Id. at 156 (quoting State v. Smullen, 118 N.J. 408, 416 (1990)).

Under Rule 3:9-3(e), a motion to withdraw a guilty plea made before or at the time of sentencing will be granted "[i]f at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel." Ibid. (quoting R. 3:9-3(e)). Courts should "exercise their discretion liberally to allow plea withdrawals" before sentencing, and "[i]n a close case, the 'scales should usually

tip in favor of defendant.'" Ibid. (quoting State v. Taylor, 80 N.J. 353, 365 (1979)).

Here, we are convinced the record is insufficient for us to determine whether a motion to withdraw defendant's guilty plea would have been successful. On this point, the court did not address whether defendant could assert "a colorable claim of innocence" or "whether withdrawal would result in unfair prejudice to the State." Id. at 157-58. Under these circumstances, we find the proper course is to remand for the court to consider in the first instance whether defendant is entitled to withdraw his guilty plea under Slater. See State v. Micelli, 215 N.J. 284, 293 (2013) (Rule 2:10-5 "permits appellate courts to exercise original jurisdiction . . . 'only with great frugality.'" (quoting Tomaino v. Burman, 364 N.J. Super. 224, 234-35 (App. Div. 2003))).

Finally, the State also reprises its argument relying upon the doctrine of invited error. Specifically, it contends "[d]efendant did not have the right to have the ramifications of his prior duplicity at the plea stage corrected by sentencing counsel who rightfully assumed he was honest and forthcoming with [plea] counsel." We are not persuaded.

"Under the invited error doctrine, 'trial errors that "were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are

28

not a basis for reversal on appeal."'" State v. Munafo, 222 N.J. 480, 487 (2015) (quoting State v. A.R., 213 N.J. 542, 561 (2013)). As our Supreme Court has explained, "a 'defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.'" State v. Jenkins, 178 N.J. 347, 358 (2004) (quoting State v. Pontery, 19 N.J. 457, 471 (1955)).

Having reviewed the court's comprehensive oral decision in which it reviewed and distinguished the authority relied upon by the State as well as for the reasons stated in its amplification, we see no reason to disturb the court's factual findings nor the legal conclusions flowing therefrom with respect to the invited error issue, and we are satisfied that, on these unique and idiosyncratic facts, defendant's misrepresentations did not vitiate sentencing counsel's independent duty to investigate the discrepancies between defendant's claim to be a United States citizen and the contrary information in the PSR.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION