# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0825-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LORENZO OLIVER,
a/k/a LAWRENCE OLIVER,
and ODRIER LAWRENCE,

    Defendant-Appellant.

_____

Submitted October 8, 2025 – Decided November 25, 2025

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 21-04-0473.

Lorenzo Oliver, self-represented appellant.

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Lorenzo Oliver appeals his conviction and sentence for failing to register or inform law enforcement of a change of address or status. Having reviewed the record in light of applicable legal principles, we affirm.

I.

In May 1995, a jury found defendant guilty of two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); two counts of third-degree criminal restraint, N.J.S.A. 2C:13-2; and one count of second-degree attempted sexual assault, N.J.S.A. 2C:14-2(c) and 5-1. See State v. Oliver, 133 N.J. 14, 149 (1993). The sentencing court determined defendant's conduct to be repetitive and compulsive and classified him as a persistent offender, imposing a thirty-year prison term with a twelve-year period of parole ineligibility to be served at the Avenel Diagnostic Treatment Center. Ibid.

In 2009, defendant was released on parole, and the State moved to civilly commit him to the Special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38. The court granted the State's motion and committed defendant to the STU in 2010 until his discharge with conditions in May 2019. Among the conditions of release, defendant had to comply with Megan's Law registration requirements, had restricted computer use, and was subject to GPS monitoring by an ankle-bracelet device. Defendant

2

consented to these conditions in an executed "Consent Order of Conditional Discharge." In that order, he also agreed to abide by the additional conditions following his release from the STU, including, "random drug/alcohol screens, random house checks, [and] parole visits . . . ."

On September 9, 2020, pursuant to the Consent Order, parole officers conducted an inspection of defendant's residence in Newark. A search of his cell phone and laptop revealed adult pornography and a Facebook account, through which defendant was contacting his minor niece, who was among his former adjudicated victims. The officers determined that content violated terms of defendant's release conditions and seized the cell phone and laptop. On September 18, a parole board recommended defendant be returned to the STU for evaluation.

On the same day, defendant's GPS bracelet generated a "tamper alert." Parole officers responded to defendant's last known location, a TD Bank parking lot in Newark. There they found the GPS bracelet, which had been severed and discarded in the trash. The officers did not find defendant in the immediate area or in his last-reported residence. They also learned that defendant had failed to verify his address with the Newark Police Department, as required by Megan's Law, N.J.S.A. 2C:7-2(d)(1). The State moved to suspend defendant's

3

conditional discharge.  On September 22, the court granted the State's motion to suspend defendant's conditional discharge and further ordered that on apprehension he be "immediately remanded to the STU for evaluation . . . to determine if [defendant]'s [o]rder for [c]onditional [d]ischarge should be vacated and if he should be [re-]committed as a [s]exually [v]iolent [p]redator[, who is highly likely to sexually re-offend]."

Defendant remained unapprehended as an Essex County grand jury convened and billed an indictment on April 1, 2021, charging him with: third-degree failure to register a change of address, N.J.S.A. 2C:7-2d(1) (count one); third-degree criminal mischief, N.J.S.A. 2C:17-3a(1) (count two); third-degree failure to register as a convicted sex offender, N.J.S.A. 2C:7-2e (count three); third-degree escape from parole supervision, N.J.S.A. 2C:29-5b (count four); and third-degree interference of a monitoring device, N.J.S.A. 30:4-123.95 (count five).  On August 3, 2021, defendant was arrested on a fugitive warrant in Philadelphia and returned to New Jersey for prosecution.

In February 2022, defense counsel filed a motion to dismiss counts four and five of the indictment, contending defendant was not subject to parole supervision for life and, thus, was not properly charged with violations predicated on that status.  N.J.S.A. 2C:43-6.4(a).  Counsel also challenged count

4

two, disputing the monetary valuation of damage allegedly incurred by the GPS unit. Subsequently, in March 2022, defendant moved pro se for dismissal of the entire indictment.

During oral argument of both motions on July 7, 2022, the State consented to dismiss counts four and five. The State also agreed not to use the evidence seized from defendant's residence — cell phone and laptop — in the forthcoming prosecution. The court declined to dismiss count two but directed the State to clarify and, if warranted, to amend the alleged monetary amount of damage to the GPS bracelet. The court then addressed and denied defendant's dismissal motion, leaving counts one, two, and three. The court memorialized its oral rulings in a written order entered the same day.

On June 26, 2023, defendant pleaded guilty to count one of the indictment. Pursuant to a negotiated plea agreement, the State agreed to dismiss counts two and three and recommend a maximum sentence of three years in New Jersey State Prison. On September 25, the judge sentenced defendant to time served, as he had accrued 784 days of jail credit, more than twenty-six months. Thereafter, defendant was civilly re-committed to the STU. The court memorialized the conviction and sentence in a judgment of conviction it entered on September 27, 2023.

A-0825-23

Defendant, through counsel, filed a notice of appeal of that judgment on November 17, 2023. On September 9, 2024, at defendant's request, his appellate attorney moved to be relieved as counsel. That application was granted. Defendant submitted a pro se brief and appendix on February 19, 2025, advancing the following arguments:

POINT I

[THE] TRIAL COURT [ERRED] BY NOT DISMISSING [THE] INDICTMENT BASED ON PRINCIP[LES] OF FUNDAMENTAL FAIRNESS, [THE] CIVIL COURT'S RETROACTIVE APPLICATION OF RE-CONSTRUCTIVE P.S.L. [PAROLE SUPERVISION FOR LIFE, N.J.S.A. 2C:43-6.4] AND S.O.M.A. [SEX OFFENDER MONITORING ACT, N.J.S.A. 30.4-123.89 TO -123.95] STATUTES DEPRIVED [DEFENDANT] OF [HIS] FEDERAL [AND] STATE CONSTITUTIONAL RIGHTS TO PRIVACY, SEARCH AND SEIZURE, EX POST FACTO, DOUBLE JE[O]PARDY AND THE DUE PROCESS CLAUSE[S], IN VIOLATION OF THE [FIRST], [FOURTH], [FIFTH], [FOURTEENTH] [AMENDMENTS], AND [ART]. I, [§] 9, [CL]. 3, N.J. [CONST]. [ART]. IV, [§] 7, [PARA]. 3 N.J. [CONST]. [ART]. I. [PARA]. 7, N.J. [CONST]. [ART]. I, [PARA]. II AND, N.J. [CONST]., [ART]. I, [PARA]. I.

POINT II

DEFENSE COUNSEL['S] DENIAL TO FILE [A] MOTION TO DISMISS THE INDICTMENT ON CONSTITUTIONAL GROUNDS, SUPPRESS ILLEGAL EVIDENCE AND PROTECT

6

DEFENDANT FROM BEING TORTURED TO FORCE HIM INTO A PLEA BARGAIN DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE [SIXTH] AND [FOURTEENTH] AMENDMENT[S] [TO THE] U.S. CONSTITUTION.

POINT III

APPELLANT REQUEST[S] THAT THE HONORABLE COURT OVERTURN HIS PLEA BARGAIN, BECAUSE APPELLANT WAS FORCED TO TAKE THE BARGAIN BY FORCE AND DEFENSE COUNSEL WAS INEFFECTIVE IN PROTECTING APPELLANT AND FAILED TO FILE [THE] MOTION TO SUPPRESS, DEPRIVING HIM OF DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL[,] AND CRUEL AND UNUS[U]AL PUNISHMENT, IN VIOLATION OF THE [SIXTH,] [EIGHTH,] AND [FOURTEENTH] AMEN[DMENTS] [TO THE] U.S. CONST[TITUTION].

In response, the State argues defendant's appeal of the denial of his motion to dismiss is barred on procedural and substantive grounds. As defendant did not reserve the right to appeal any of his pretrial motions in accordance with Rule 3:9-3(f), the State argues defendant is foreclosed from raising any such challenge on appeal.

Further, the State argues its voluntary dismissal of counts four and five of the indictment, as well as counts two and three pursuant to terms of the plea bargain, renders moot any argument for their dismissal. The State contends

7

defendant's factual basis met the elements for guilt as to count one. The State maintains defense counsel acted effectively and that defendant has adduced no evidence to support his assertions of coercion or torture.

## II.

We first assess defendant's guilty plea to determine whether it satisfied the requisites of our rules and case law, bearing in mind that a guilty plea constitutes the "final relinquishment of the most cherished right — to be presumed innocent of crime until a jury of one's peers has determined guilt beyond a reasonable doubt." State v. Smullen, 118 N.J. 408, 414 (1990). Before accepting a guilty plea, a court must "be satisfied from the lips of the defendant that he committed the acts which constitute the crime" and must establish a factual basis for the plea. Id. at 415.

In this context, we examine the record. At the plea proceeding, the following colloquy occurred between the judge and defendant after administration of the oath:

> COURT: Mr. Oliver, what I just placed on the record, is that your understanding of this agreement with the caveat that I said that I'm going to put a sentencing date of 8/25 and at that time I would sentence you to time served?
>
> DEFENDANT: Yes, that's . . . what I heard.

8

COURT: Okay. Is that your understanding of this agreement?

DEFENDANT: My understanding is what I just heard.

. . . .

COURT: Has anyone forced or threatened you in any way to plead guilty to this charge?

DEFENDANT: No.

COURT: Have you had enough time to discuss this matter with your attorney?

DEFENDANT: Yes.

COURT: Has he answered all your questions?

DEFENDANT: Yes.

COURT: Are you satisfied with his representation?

DEFENDANT: Yes.

The judge then reiterated salient aspects of the plea form. The judge advised defendant that by virtue of his guilty plea he was waiving his constitutional rights to remain silent, to confront witnesses against him, and to a jury trial. Defendant indicated he still wished to plead guilty. Satisfied with defendant's answers, the judge turned to defendant's counsel to elicit a factual basis:

COUNSEL: On or about September 18th of the year 2020 in the City of Newark you were required to notify the Newark [P]olice [D]epartment of any change of address, correct?

DEFENDANT: Yes.

COUNSEL: Based on Megan's Law, correct?

DEFENDANT: Yes.

COUNSEL: And on that date you did fail to . . . notify the Newark Police that there was actually a change of address from the previous address that you had given them on August 10th, 2020, correct? Correct?

DEFENDANT: -- my address, the location, yes.

Defense counsel submitted as to the factual basis, and the judge continued with questioning:

COURT: And, Mr. Oliver, do you now have any questions for myself or the prosecutor or for your attorney about anything concerning this guilty plea? Do you have any questions?

DEFENDANT: No.

COURT: And do you wish for the [c]ourt to accept your plea of guilty to this matter?

DEFENDANT: Yes.

In accepting his guilty plea, the judge found defendant had "laid a sufficient factual basis in order to be found guilty" of the charge, had entered

10

his plea voluntarily, without force or threat, and was not "under the influence of any foreign substance."

We defer to the trial court's factual findings at a defendant's plea hearing. Balducci v. Cige, 240 N.J. 574, 595 (2020). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). We give "'deference to those findings of the trial judge which are substantially influenced by [her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting Johnson, 42 N.J. at 161). With respect to determinations of law, our review is plenary. State v. Handy, 206 N.J. 39, 45 (2011).

Trial courts are bound by Rule 3:9-2, which provides in pertinent part:

> The court, in its discretion, may refuse to accept a [defendant's] plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily . . . and with an understanding of the nature of the charge and the consequences of the plea.

When accepting a guilty plea, the trial court should inquire

11

whether anyone had forced, threatened, or put [defendant] under pressure to plead guilty, (2) whether the defendant understood that he was relinquishing certain constitutional rights, (3) whether the defendant understood the nature of the charge and content of the sentencing recommendation, and (4) whether the defendant was in fact guilty of the specific charge[.]

[State ex rel. T.M., 166 N.J. 319, 336 (2001) (citing State v. Smullen, 118 N.J. 408, 411-12 (1990)).]

After careful review of the record, we are satisfied the judge's decision to accept defendant's plea as knowing and voluntary was supported by an adequate factual basis, grounded in credible evidence. Defendant's unambiguous, sworn responses to the judge's inquiries adequately support her findings regarding his knowing waiver of associated constitutional rights consistent with applicable legal principles.

Waiver of Related Claims

We next consider whether defendant is permitted on appeal to challenge the court's denial of his motion to dismiss or pursue alleged ineffectiveness of counsel for failing to file a motion to suppress evidence.

"Generally, a guilty plea constitutes a waiver of all issues that were or could have been raised in prior proceedings." State v. Smith, 307 N.J. Super. 1, 7 (App. Div. 1997) (emphasis added). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is

A-0825-23

charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id.

There are three exceptions to this general rule, two of which are pertinent. First, Rule 3:9-3(f) provides, "[w]ith the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion." R. 3:9-3(f); see also State v. Knight, 183 N.J. 449, 452 (2005). Second, pursuant to Rule 3:5-7(d) and Rule 7:5-(c)(2), "only motions for suppression on the grounds of an unlawful search and seizure automatically survive the entry of a guilty plea." Knight, 183 N.J. at 471 (quoting State v. Greeley, 178 N.J. 38, 50-51 (2003)) (emphasis in original). A third exception concerns appeal of denial of entry to the pretrial intervention program, inapplicable here.

Regarding the first exception, a review of the plea form reflects that defendant checked "No" in response to question 4(e), which reads, "Do you further understand that by pleading guilty you are waiving your right to appeal the denial of all other pretrial motions except the following[.]" However, no such pretrial motions are listed on the form, nor were any identified on the

13

record. Thus, there was no compliance with Rule 3:9-3(f)'s requirement that "any specified pretrial motion" be identified. Further, the possibility of defendant entering a conditional guilty plea was not raised on the record in the plea proceeding or any other proceeding before the trial court.

We consider defendant's Fourth Amendment claim as allowed under Rule 3:5-7(d) and raised in defendant's first point. To begin, a "parolee's or probationer's reduced expectation of privacy makes reasonable a certain degree of governmental intrusion that would be unreasonable in relation to an ordinary citizen." State v. Maples, 346 N.J. Super. 408, 415 (App. Div. 2002) (quoting Morrisey v. Brewer, 408 U.S. 471, 480 (1972) (holding reasonable suspicion is enough to justify the warrantless search of a probationer's home)). As a parolee, defendant is subjected to a lower expectation of privacy, as evidenced by the "Consent Order of Conditional Discharge" executed before his release from the STU in May 2019.

Aside from defendant having a lower expectation of privacy, we observe the State did not use in its prosecution the evidence seized against defendant. The State agreed the seized evidence was not relevant to the remaining charges and advised the court it would not be introduced at trial. Thus, even if the trial court suppressed the evidence, the outcome would have been no different and

14

there is no scenario in which defendant's Fourth Amendment rights would be implicated.

Because neither exception to the general waiver rule has merit, we reject the claims of constitutional transgression composing the gravamen of defendant's first, second, and third points.

Motion to Dismiss the Indictment

Defendant asserts the court erred in declining to dismiss the indictment because the charges it contained violated his constitutional rights.

"Judicial involvement with and review of the grand jury is generally limited." State v. Shaw, 241 N.J. 223, 239 (2020). At the grand jury stage, the State is not required to present enough evidence to sustain a conviction. State v. Feliciano, 224 N.J. 351, 380 (2016). "As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Id. (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)). A grand jury indictment is presumptively valid. State v. Wade, 476 N.J. Super. 490, 495 (App. Div. 2023). "A court should dismiss an indictment only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective." Id. A trial court's denial of a motion to dismiss an indictment is reviewed for an abuse of

discretion.  State v. Bell, 241 N.J. 552, 561 (2020).

As an initial matter, defendant's challenge to the indictment is procedurally barred.  Because defendant did not preserve the issue by entry of a conditional guilty plea, he has waived his right to relief.  See State v. Marolda, 394 N.J. Super. 430, 435-36 (App. Div. 2007).  Notwithstanding this procedural status, we determine the trial court did not abuse its discretion in denying defendant's motion to dismiss the indictment.  Our review of the grand jury transcript satisfies us that the evidence presented was sufficient to satisfy the low burden of proof required to sustain an indictment on its face.  There is nothing in the record to rebut the indictment's presumptive validity or show it was "palpably defective."

Ineffective Assistance of Counsel

In this direct appeal of the 2023 judgment of conviction, defendant claims his plea counsel was ineffective for failing to move to suppress evidence and to dismiss the indictment in its entirety.  Ineffective-assistance-of-counsel claims are "particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding."  State v. Hess, 207 N.J. 123, 145 (2011) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)).  Our Supreme Court has recognized a "general policy against entertaining ineffective-

assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Preciose, 129 N.J. at 460. Following that policy, we decline to entertain defendant's ineffective-assistance claim in this direct appeal.

"Overturning" the Plea Agreement

In his third point, defendant requests this court to "overturn his plea bargain." Rule 3:21-1 permits a defendant to move to withdraw a guilty plea post-sentencing "to correct a manifest injustice." A plea may be set aside in the court's discretion. State v. Slater, 198 N.J. 145, 156 (2009). "Motions filed at or before the time of sentencing will be granted in the 'interests of justice,' R. 3:9-3(e); post-sentencing motions must meet a higher standard of 'manifest injustice' to succeed, R. 3:21-1." Id. The interest in finality is greater post-sentencing, and "thus the standard for withdrawing a guilty plea is more onerous." State v. Munroe, N.J. 429, 441 (2012). A plea entered on a negotiation has been held to be entitled to an even higher degree of finality. State v. Means, 191 N.J. 610, 619-20 (2007). "[E]fforts to withdraw a plea after sentencing must be substantiated by strong, compelling reasons." Slater, 198 N.J. at 159. "A bare assertion of innocence is insufficient to justify withdrawal of a plea. Defendants must present specific, credible facts and, where possible,

point to facts in the record that buttress their claim." Id. at 158.

Procedurally, defendant's claim is improper because he did not move to withdraw his plea pursuant to Rule 3:21-1.  Instead, he seeks to withdraw his guilty plea for the first time on direct appeal, which is inappropriate because he deprived the trial court of the opportunity to engage in the Slater analysis and attendant fact finding.  It is well-settled that appellate courts will not consider evidence submitted on appeal that was not in the record before the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

In the absence of a requisite application before the trial court to withdraw his guilty plea, the question defendant presents us may not be considered.

Allegations of Torture

Finally, without first having moved before or notified the trial court, defendant claims he was compelled to plead guilty due to mistreatment in the Essex County Correctional Facility (ECCF).  In support of his claim, defendant asserts in his brief that while incarcerated in the ECCF from September 21, 2022, until his day of sentencing, September 23, 2023, he was "tortured in [his] cell."  This torture purportedly consisted of being "burned on [his] feet at night as [he] slept . . . [by] some kind of laser, like a pin laser that can be held in your hand like a flash li[ght]."  Defendant does not support those allegations with any

18

citations to the record. Although defendant claimed to have been examined at the jail by a medical doctor in connection with his complaints, he adduces no records or corroborating material of any kind. Defendant requests "a hearing so that there can be a record made for appe[llate] review." As above, in the absence of a preceding application before the trial court and evidence beyond mere allegation, defendant's claims cannot be entertained on appeal, and we therefore reject them.

Any remaining arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0825-23